Saul L. CUPP, Plaintiff (Respondent),

v.

Robert MONTGOMERY and Almeda Montgomery, Defendants (Appellants).

No. 32128.

St. Louis Court of Appeals,
Missouri.

Sept. 20, 1966.

Motion for Rehearing or to Transfer to
Supreme Court Denied Oct. 19, 1966.

Application to Transfer Denied Dec. 12, 1966.

Willson, Cunningham, McClellan & Gunn, Jerome M. McLaughlin, St. Louis, for defendants-appellants.

Edward F. Downey, John J. Delabar, St. Louis, for plaintiff-respondent.

RUDDY, Judge.

Defendants have appealed from a judgment in favor of plaintiff in the sum of $5,000 for damages resulting from personal injuries sustained when plaintiff slipped and fell off of the back porch on premises owned and occupied by defendants. Defendants offered no evidence and the case was submitted to the jury on the evidence adduced by the plaintiff.

Plaintiff is the uncle of defendant, Almeda Montgomery, whose mother is the sister of plaintiff. Defendants are husband and wife and were the owners of and resided at 4813 Roseblossom Lane in Hazelwood, Missouri. Some time prior to March 31, 1962, defendant, Robert Montgomery, called his wife's mother and asked her to tell plaintiff to come to the home of defendants to help with the sowing of grass seed in the yard of defendants' property. This message was conveyed to plaintiff's wife who in turn told plaintiff. On March 31, 1962, at 12:00 noon, pursuant to the invitation, plaintiff and his wife arrived at the home of defendants. After the noon repast, plaintiff and defendant, Robert Montgomery, started to sow grass seed in the yard. The yard had been dug by a rotary tiller. When this was done is not shown in the record. After sowing the seed they sprinkled water on the ground and, thereafter, spread straw over the ground. As a result of their activities there was mud over most of the yard. Attached to the back of defendants' home and adjacent to a doorway entrance to the home of defendants was a small platform type porch consisting of a concrete slab, gray in color, which was four or five feet square. The top level of the porch was fourteen inches above the surrounding ground. On the left side of the porch, as you face the house, there were two steps leading up to the porch level.

About 3:00 P.M. plaintiff went into defendants' home through the doorway referred to above, and in doing so he did not use the steps leading up to the porch. Instead, he stepped directly from the yard to the top level of the porch. His purpose in going into the house was to get a drink of water. Thereafter, he returned to his activities in the yard.

About 5:00 P.M. defendant, Robert Montgomery, went into the house and in doing so " * * * tracked mud * * *" on the back porch. About an hour later, at approximately 6:00 P.M., plaintiff desiring another drink of water, started to step directly from the yard to the top level of the porch. Again, he did not use the steps. He placed his left foot on the porch, as he explained it, "Right on the edge," at which time his right foot was still on the ground. As he started to raise his right foot up to reach the level of the porch with both feet, he slipped completely back to the ground and was injured. He looked to see what caused his foot to slip and saw it was some mud on the edge of the porch, which he described as, " * * * near the color of the porch * * *." When looking at the mud he could see the impression his foot left as it went through the mud. Plaintiff, when asked to describe the lighting conditions said, " * * * it wasn't dark and it wasn't light, I would say something near dusk, * * *." He said that both of his

feet were not on the concrete porch at the time he fell, only his left foot was on the porch. In his cross examination plaintiff testified that he had been to the home of defendants on a number of occasions prior to this occurrence and had stayed at their home overnight. Also, in his cross examination, plaintiff testified that when he approached the porch he was looking in the general direction of it, could see the porch, but could see no mud on it at that time. When he stepped up onto the porch with his left foot he did not see any mud, but after he fell and looked to see what caused his fall, he said the mud was clearly visible. When asked if that was the only mud he saw there, he answered, "Yes, that is all—I know there was mud there—that is all I could see." He said he did not have any mud on his shoes because he had cleaned them off on the straw before he started into the house and looked at the bottom of his shoes before he walked in. Inasmuch as defendants do not claim the verdict is excessive we omit all evidence pertaining to the nature and extent of plaintiff's injury.

Defendant, Almeda Montgomery, was in her home at the time of the fall and after administering first aid to the plaintiff went out and looked at the porch. In describing the lighting conditions she said it was dusk —twilight at the time and that the outside electric porch light was not turned on. She described the color of the concrete as gray and the mud as, "* * * a kind of a clay mud." The mud she saw on the porch was, "Kind of on the edge" of the porch and she immediately took a pan of water and a broom and scrubbed it off.

Defendant, Robert Montgomery, did not testify in the trial below. However, over defendants' objection a statement signed by Robert Montgomery contained in a Request for Admissions made pursuant to Civil Rule 59.01(a), V.A.M.R. was read into evidence. Defendants do not include in their points relied on in this appeal any contention that the statement was inadmissible.

The pertinent parts of the statement signed by Robert Montgomery and read to the jury are as follows:

"My name is Robert Montgomery. My wife, Almeda and I (together with our children) are the owners and occupants of 4813 Roseblossom in St. Louis County, Missouri. On Saturday, March 31, 1962, we were working in our yard seeding and soaking the back yard. We invited Saul Cupp and his wife, Margaret Cupp, to our house to help with the yard work. Saul broke his left leg by his ankle about 6:00 P.M. on March 31, 1962, when he fell on our back porch on a slippery and muddy place where I tracked mud when going into the house about one hour before Saul fell. I didn't warn Saul about the mud on the porch because I was busy and it was sunshiny and bright when I tracked the mud onto the porch. It was getting dark when Saul fell but we didn't turn the light on in back. The muddy spot on the porch wasn't easy to see because it was similar in color to the porch. I guess I could have wiped the porch clean in a minute or two and eliminated the risk of someone slipping on it, but I didn't want to take the time to do it because I was busy."

Defendants in their first contention assert that their motion for a directed verdict at the close of plaintiff's case should have been sustained for the reason that the evidence established that at the time of plaintiff's fall he was a social guest or bare licensee and plaintiff failed to prove any actionable negligence against defendants. Opposing this is plaintiff's contention that he was an invitee, and he further contends that, even if he was a licensee he made a submissible case because of defendants' active negligence.

Under the facts of this case it is certain that plaintiff was not a trespasser. He was either an invitee or a licensee and if he was injured by the active negligence of defendants it would be immaterial whether he was an invitee or a licensee.

In either case defendants would be liable for damages resulting from such negligence. If we were to accept defendants' characterization of plaintiff's status at the time of his injury, namely, that of a bare licensee, nevertheless, defendants would be liable if active negligence was committed by them. Where injuries to a licensee are caused by the affirmative or active conduct of another, as distinguished from an existing or passive condition of the premises, the person committing the acts is subject to liability for failure to exercise ordinary care towards such licensee if his presence on the land is known or should reasonably be known to the actor. White v. Burkeybile, Mo., 386 S.W.2d 418; Anderson v. Welty, Mo.App., 334 S.W.2d 132. As said in the case of Anderson v. Welty, supra, (1.c. 137)

"* * * Numerous Missouri cases have recognized this general rule. As our Supreme Court put it in Menteer v. V. Scalzo Fruit Co., supra, 240 Mo. [177] loc. cit. 184, 144 S.W. [833] loc. cit. 835, a licensee 'may complain of wanton or intentional injury *or active negligence, it is said*, but not that the place into which he goes for his own purposes and without invitation was not made safe in anticipation of his unexpected and undesired presence'; or, as succinctly stated in Twine v. Norris Grain Co., 241 Mo. App. 7, 19, 226 S.W.2d 415, 422(7), 'It is true, of course, that a land occupier is subject to liability for bodily harm caused to a licensee by the *active or affirmative negligence* of the occupier.' * * *"

We will assume, without so ruling, that plaintiff was a licensee at the time of his injury.

■ At the threshold of our discussion it is necessary to determine what constitutes active negligence as opposed to passive negligence. First, we point out, it is undisputed that plaintiff's presence on the property was known to both defendants. Active or affirmative negligence has been de-

fined as negligence occurring in connection with activities conducted on the premises; Wolfson v. Chelist, Mo.App., 278 S.W.2d 39, 47; Anderson v. Welty, supra; Simpson v. Richmond, 154 Cal.App.2d 27, 315 P.2d 435, 437; Potter Title & Trust Co. v. Young, 367 Pa. 239, 80 A.2d 76; whereas, passive negligence is negligence that causes danger by reason of the physical condition of the premises. Anderson v. Welty, supra, or, as we said in Wolfson v. Chelist (supra, 278 S.W.2d 1.c. 47) "* * * negligence which permits defects or causes dangers upon the property. * * *"

In some cases the creation by the licensor of a new danger or the commission of an act which would increase a hazard after entry on the premises has been held to be the equivalent of active negligence. Porchey v. Kelling, 353 Mo. 1034, 185 S.W. 2d 820, 822; Ziegler v. Elms, Mo., 388 S. W.2d 839, 841; Warner v. Lieberman, D. C., 154 F.Supp. 362, 365; Newman v. Fox West Coast Theatres, 86 Cal.App.2d 428, 194 P.2d 706; Dunn v. Bomberger, 213 N. C. 172, 195 S.E. 364, 156 A.L.R. 1229; Brigman v. Fiske-Carter Constr. Co., 192 N.C. 791, 136 S.E. 125, 49 A.L.R. 773, 776.

In the case of Newman v. Fox West Coast Theatres, supra, the Court said that active negligence is a dereliction of duty and pointed out that a licensee accepts the premises as he finds them when he entered and was entitled to presume that the premises would remain in the same relatively safe condition in which he found them when he entered.

It is now generally held that as to any active operations which the occupier of premises carries on, there is an obligation to exercise reasonable care for the protection of a licensee. Oettinger v. Stewart, 24 Cal.2d 133, 148 P.2d 19, 156 A.L.R. 1221–1238. For further discussion as to "Liability to trespasser or bare licensee as affected by distinction between active and passive negligence," see 49 A.L.R. 778, et seq.

Summing up what we have said and cited we observe that the proper distinction between passive negligence and affirmative or active negligence is that passive negligence " * * * denotes negligence which permits defects or causes dangers upon the property. * * *" (Wolfson v. Chelist, Mo.App., 278 S.W.2d 39) and which is permitted to continue or to remain after licensee's entry and active negligence is negligence occurring in connection with activities conducted on the premises while licensee is present and his presence is known or should be known to the licensor.

■ Keeping in mind the above distinction we think plaintiff's injury was the result of active negligence. We are aware, as pointed out by defendants, that plaintiff as a licensee, accepted the premises as he found them when he entered insofar as any defective condition thereon might exist. It is undisputed that the mud on the porch which caused plaintiff's fall was not there when plaintiff entered the premises. The mud on the porch which caused plaintiff's injury was carried or " * * * tracked * * *" on the porch by defendant, Robert Montgomery, and thereby created a danger and hazard not present when plaintiff entered. The muddy condition of the yard and the mud " * * * tracked * * *" on the porch resulted from activities conducted on the premises, namely, the sprinkling of the yard with water after the grass seed was sown. The evidence shows that as a result of the activities conducted in the seeding of the yard, there was mud over most of the yard. Defendant, Robert Montgomery, admitted he " * * * tracked mud * * *" on the porch where plaintiff fell. He admitted the place where plaintiff fell was " * * * slippery and muddy * * *." He admitted he did not clean the mud off of the porch and was aware of the risk of someone falling. He knew of plaintiff's presence and admits he did not warn him of the presence of the mud. The evidence shows that plaintiff did not know of the presence of the mud.

We are aware that the failure to warn, *standing alone,* is negative in nature (Anderson v. Cinnamon, 365 Mo. 304, 282 S.W. 2d 445, 450(8), 55 A.L.R.2d 516); however, when it is coupled with an affirmative negligent act arising out of the activities defendant, Robert Montgomery, was engaged in on the premises, the act being the tracking of the mud on the porch and his knowledge thereof and his failure to correct the condition or to warn plaintiff of the danger, it presents facts from which a jury could find active or affirmative negligence.

We have found no Missouri case involving comparable facts. There are cases involving moving objects causing injuries to a licensee where the occupier of the premises was held liable. However, cases from other jurisdictions involving analogous facts have held the licensor liable, holding there was active negligence.

In the case of Newman v. Fox West Coast Theatres, supra, plaintiff entered defendant's theatre without paying an admission fee and with the consent of the theatre manager. Plaintiff was held to be a licensee and in that case it was said, " * * that a licensee may recover for 'active negligence' or 'any overt acts of negligence' as distinguished from a 'passive negligence.' * * *" It appears that sometime after plaintiff entered the theatre one of the patrons entered the ladies' rest room because of illness. Apparently because of her illness a condition ensued in which there were wet paper towels and blood on the floor and also considerable water on the floor of the rest room extending to the lavatory door. This condition was reported to the manager who did nothing about the matter. Thereafter, plaintiff visited the ladies' rest room and upon entering slipped and fell receiving injury. Defendant contended that there was no active negligence established. In holding for the plaintiff the court said at 194 P.2d 1.c. 708:

" * * * In the instant case it may be assumed that respondent, as a licensee,

was obliged to accept the premises as she found them when she entered. But she was entitled to presume that the premises would remain in a relatively safe condition in which she found them when she entered. That there was no water or any foreign substance on the floor of the washroom at the time respondent entered the theatre is established by the testimony of defendant's usherette who inspected the washroom four times that evening. Admittedly the extent of appellant's obligation to respondent as a licensee was to use ordinary care; but when, after her entrance, there occurred on the premises a new condition involving greater risk of injury to a visiting patron, there also arose a new duty of appellant to rectify that condition or to warn such patron of that condition and the risk involved therein. * * *"

We can see no material difference between the facts in the above case and those in the instant case.

In the case of Anderson v. Cinnamon, supra, the above case (Newman v. Fox West Coast Theatre, supra) was cited to the court by plaintiff in support of a contention that defendant was guilty of active negligence. In the Cinnamon case the court held that plaintiff's petition did not show a case of active negligence, in that failure of defendant, Barney Cinnamon, to warn the fireman to leave the porch was not active negligence. While the Supreme Court did not say that the Newman case involved active negligence it distinguished it from the case under review in the following words: "* * * defendant allowed water to get on a washroom floor *creating an unsafe condition after plaintiff was permitted to come on the premises,* * * *." (Emphasis ours)

In the case of Union News Co. v. Freeborn, 111 Ohio St. 105, 144 N.E. 595, plaintiff, described as a licensee by the court, in attempting to find her way to a train which she desired to take in the Union Depot in Cleveland, where she was transferring from another train, entered the restaurant of the defendant, which was located in the depot, and there inquired of an attendant where she could get the train she desired, and, pursuant to the direction, plaintiff then recrossed the room of the restaurant to procure her suitcase, and in passing out of the restaurant to her train, in accordance with the direction given her, she slipped and fell and was injured, such fall having been caused by soapy water on the floor previously oiled, which a workman had placed there after she crossed the room and before she returned, of which condition plaintiff had no knowledge. In affirming the judgment for the plaintiff the court said:

"* * * As heretofore indicated, evidence in the record supports the claim that the dangerous condition described was a new danger, and was created between the time plaintiff crossed the floor and her return, recrossing the floor of the restaurant at the same place. The claim asserted and supported by evidence was therefore one of active negligence on the part of defendant in placing before the plaintiff a new situation of danger, of which she had no knowledge and of which no attempt was made to apprise her. The principle involved is no different than that applicable, if, under the same circumstances, a flight of steps had been removed from the course she was directed to take, between the time she passed over the steps and her return or attempted return the same way. * * *"

The only difference between the above case and the instant case is that in the cited case the cause of the fall was soapy water, whereas, in the instant case it was mud. A distinction without a difference. In the case of Morrison v. Hotel Rutledge Co., 200 App.Div. 636, 193 N.Y.S. 428, plaintiff was discharged by the defendant hotel company and was permitted to remain overnight in defendant's hotel. On the following morning she fell and suffered injuries

because of a cake of soap on a stairway while she was on her way to get utensils belonging to her and used by her in her work. The lower court dismissed plaintiff's complaint, and the appellate court in holding that the complaint was improperly dismissed held that the complaint stated a cause of action of active negligence. It was assumed that the complaint showed plaintiff was a mere licensee. The complaint alleged that the soap had been left on the stairway by the scrub woman and the act was one of active negligence.

Defendants' contention that the trial court erred in overruling their motion for directed verdict at the close of the entire case must be overruled unless there is merit in their contention that plaintiff was guilty of contributory negligence as a matter of law. In support of this they contend that (a) the mud condition causing the fall and complained of by plaintiff was an open and obvious one of which plaintiff knew or should have known; (b) that defendants' duty was fulfilled when they provided a safe way into the house by means of the steps leading up to the back porch and; (c) that the manner in which plaintiff attempted to ascend to the porch of defendants' premises convicted him of contributory negligence as a matter of law.

In support of their contention that the condition causing plaintiff's fall was an open and obvious one of which plaintiff knew or should have known, defendants cite a number of cases. There is no need to discuss these cases. It is sufficient to point out what was said in one of the cases when discussing the contributory negligence of plaintiff, that " * * * there is no exact test or formula by which it may be determined whether or not a condition is so open and obvious that one is bound to see it. Each case must turn upon its own facts and circumstances. * * *" Wilkins v. Allied Stores of Missouri, Mo., 308 S.W. 2d 623, 630, l. c. 630 and Elgin v. Kroger Grocery & Baking Co., 357 Mo. 19, 206 S.W. 2d 501, 507. As a general rule a person

is not required to look for danger when he has no cause to anticipate danger, or when the danger is caused by negligence of another. Elgin v. Kroger Grocery & Baking Co., supra, l. c. 507. The issue of contributory negligence is always for the jury unless, from the whole evidence and all inferences fairly deducible therefrom, when viewed in a light most favorable to plaintiff, the only reasonable conclusion is that he was guilty of negligence proximately causing his injury. Anderson v. Welty, supra, 334 S.W. 2d l. c. 138 and cases cited therein. Applying the aforesaid rule we cannot say that plaintiff was guilty of contributory negligence as a matter of law in the respect complained of. It is clear from the evidence that plaintiff did not know of the presence of the mud on the porch. There was no reason to expect mud to be on the porch because just a few hours before plaintiff had traversed the same course and apparently encountered no mud. There was no reason for him to expect danger from the mud at the time he fell. There is no evidence to show that the presence of the mud was open and obvious to plaintiff or should have been at the time he approached the porch. The jury could have found from the evidence that the mud was of approximately the same color as the cement porch; that it was dusk and approaching twilight; and that the electric porch light was not turned on. Defendant, Robert Montgomery, said it was getting dark when the plaintiff fell and said that the muddy spot on the porch was not easy to see because it was similar in color to the porch. While plaintiff said the mud was clearly visible when looking to see what caused his fall, this is no proof to show it could and should have been seen by him as he approached and ascended the porch. We cannot say as a matter of law that the plaintiff in the instant case failed to act as an ordinary prudent person would act under same or similar circumstances. As said in the case of Becker v. Aschen, 344 Mo. 1107, 131 S.W.2d 533, l. c. 537, " * * * 'Where the danger is not so obvious that a person should have

seen it in the exercise of ordinary care, failure to discover it is not negligence.'
* * * "

Nor do we think plaintiff was guilty of contributory negligence as a matter of law for the reasons set out heretofore in (b) and (c). Plaintiff did not exceed the scope of his invitation by stepping up directly on the porch from the ground instead of using the steps. This is not a case where plaintiff had two ways open, one safe and the other unsafe. Of course, if one selects a known unsafe way instead of a safe route open to him, recovery will be defeated. Miller v. Brunson Const. Co., Mo., 250 S.W.2d 958, 961. We cannot say as a matter of law that plaintiff selected an unsafe way to reach the level of the porch. The step up from the ground was only fourteen inches and the evidence shows that plaintiff had successfully negotiated this step without mishap on a prior occasion that same afternoon. Overlooked by defendants is the fact that plaintiff's fall was not caused by stepping directly onto the porch from the ground, but in stepping onto a place on the porch which contained mud and was made slippery thereby. As we have heretofore said, whether or not plaintiff should have seen the muddy condition of the porch prior to stepping thereon was a matter for the jury's determination. Stepping up onto the level of a porch fourteen inches above the ground, we cannot say as a matter of law, is an obviously hazardous undertaking. Defendants say that plaintiff should have taken the steps leading up to the porch because they were free and clear of any mud or other foreign substance. We find no testimony concerning the condition of these steps. It is true that when plaintiff was asked if the mud he slipped on was the only mud he saw, that he answered "Yes," but he also said " * * * I know there was mud there—that is all I could see." There is *nothing in the question asked and the* answer given that indicates he had made any reference to the condition of the steps leading up to the porch. In the case of Buff v. Loch, Mo.App., 396 S.W.2d 263,

we were confronted with a somewhat similar factual situation to that here present. In that case defendant asserted that plaintiff was contributorily negligent as a matter of law. We held that the question was one of fact for the jury to determine and denied defendant's contention. The contention of defendants that the trial court erred in overruling their motion for a directed verdict at the close of the entire case must be overruled.

■ In their next point defendants complain about plaintiff's Instruction No. 1. What we have said heretofore sufficiently answers the substance of their first complaint about this instruction. As we have pointed out it is immaterial whether plaintiff is considered an invitee or licensee when he was on the premises. In either case defendants would be liable if plaintiff's injuries were caused by active negligence.

■ Defendants' second complaint about this instruction must be sustained. They complain that the instruction is prejudicially erroneous in that it fails to require a finding that plaintiff had no knowledge of the condition which is alleged to have caused his fall. The instruction is lengthy and we need not set it out. At no place in the instruction was the jury required to find that plaintiff had no knowledge of the condition which caused his fall. This is not disputed by plaintiff and plaintiff in his brief seeks to excuse this failure for reasons that we find insufficient. In our case of Daggs v. Patsos, Mo.App., 260 S.W.2d 794, we said:

"It is clearly the law that absence of knowledge of the dangerous condition, on the part of the plaintiff, is an essential element of plaintiff's case. The theory of liability in this type of case is that the unsafe condition is known to the owner and unknown to the invitee. There is no liability for an injury from a danger that is obvious or as well known to the invitee as to the owner. * * * " (Citing cases).

We held that the giving of this instruction that failed to include this essential element of the case was reversibly erroneous and remanded the case for a new trial.

In the case of Hoffman v. Kroger Co., Mo.App., 340 S.W.2d 152, it was contended that the verdict directing instruction was erroneous because it failed to require the jury to find that the plaintiff had no knowledge of the drainage depression on the parking lot. We pointed out that the theory of liability in these cases requires that the dangerous condition must be known to the defendant and unknown to the plaintiff and that absence of knowledge of the condition on the part of the plaintiff is an essential part of plaintiff's case, citing Daggs v. Patsos, supra. Because of the failure of plaintiff to include in his verdict directing instruction the essential element referred to, we find the instruction is erroneous and the case must be remanded.

■ In the final point relied on by defendants they contend that the trial court erred in giving and reading to the jury the measure of damages instruction which permitted the jury to consider plaintiff's loss of income. Defendants contend there was no evidence in the record upon which to base such a finding. In support of this they urge the argument that the only evidence of income offered by plaintiff was that of Unemployment Compensation Benefits which plaintiff testified he was receiving at the time of his injury. Defendants contend that the trial court was in error in permitting this testimony but state that even if it was properly received Unemployment Compensation Benefits are not properly considered as income. In the case of Naeger v. Naeger, Mo.App., 339 S.W.2d 492, we held that plaintiff's loss of Unemployment Compensation as a result of injuries which made him no longer available for work due to his disability was a proper element of damages to be considered by the jury. For a discussion of our reasons for so holding see the text of the case. This final point of defendants is overruled.

Because of the error in giving plaintiff's Instruction No. 1 the judgment is reversed and the cause is remanded for a new trial.

WOLFE, P. J., and ANDERSON, J., concur.