**MIDWESTERN REALTY CORPORATION (formerly Craftmark Industries, Inc.) a Corporation, Plaintiff-Appellant,**

v.

**CITY OF GRANDVIEW, Missouri, a Municipal Corporation, Defendant-Appellant.**

No. 24707.

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1967.

Application to Transfer Denied
July 10, 1967.

Charles W. Hess, of Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, for plaintiff-appellant.

James C. Morris, Guy W. Rice, Kansas City, for defendant-respondent.

MAUGHMER, Commissioner.

The plaintiff, Midwestern Realty Corporation, is the successor corporate entity of *Craftmark Industries, Inc.*, which in turn *was successor to Meadowmere Corporation.* The defendant, City of Grandview, was at all times herein mentioned, a fourth class city of the State of Missouri.

The plaintiff filed suit against defendant in the Circuit Court of Jackson County, Missouri under which it sought judgment for $21,232.40, with interest from March 2, 1956. The suit was predicated upon alleged advancements in that amount which had been made to defendant for use in the construction of sewer facilities. Plaintiff based its claim upon a "contract" signed on March 2, 1956, by the president and secretary of Meadowmere Corporation and by the Mayor of the City of Grandview. This contract described Meadowmere Corporation as "Contractor" and the City of Grand-

view as "City". Meadowmere's interest in the matter arose from the fact that it owned an "addition" or "residential development" adjoining the City of Grandview as then constituted, and desired sewer facilities for this project.

The "Contract" recited that Grandview had been attempting for two years to build a sewer system, had voted bonds, secured a federal grant, condemned a treatment plant site, and obtained a building permit; that the City, by a Resolution signed by its Board of Aldermen, had authorized execution of an agreement with "Contractor" concerning advancement of funds and construction, and that Tri-City Construction Company was willing to contract for the construction. We now quote Paragraph 3 verbatim:

"The Contractor hereby assumes and releases City from all liabilities caused by, or resulting, directly or indirectly, wholly or in part, from any failure or fault on *the part of the City in furnishing services* pursuant to this agreement and Contractor shall indemnify and hold City harmless from and against all claims, demands, expenses, suits, proceedings (including related expenses and attorney fees) and liabilities of any nature whatsoever, including damage to property and for personal injury or death arising out of or in connection *with the performance or rendition of any work or services under this contract".* (Italics ours).

The contract contained no specific agreement or promise on the part of the City to repay the advancements. Mr. Fred E. J. Hornaman, vice-president of Meadowmere, said of the alleged promise: "It was a gentlemen's agreement".

By its answer, defendant invoked the statute of limitations, pleaded that the funds advanced by plaintiff were expended for the benefit of plaintiff in providing sewers for its residential development and alleged the advancements were made solely in consideration of defendant providing sewer facilities and services to plaintiff. Defendant

also filed a counterclaim, asserting that it built a sewage lagoon or treatment plant on the lands of plaintiff and was sued by adjoining landowners and that defendant expended $7500 in defense of said suits and in satisfying judgments procured therein; that plaintiff had agreed "to hold defendant harmless" in such matters and asked judgment under the counterclaim for $7500 and costs.

A jury was waived and the Court, after hearing the evidence, found for defendant on plaintiff's petition and for plaintiff on defendant's counterclaim. The Court entered the following, among other, findings of fact: The contract was executed on March 2, 1956, a Resolution was unanimously passed by the Board of Aldermen of the City of Grandview on February 16, 1956, authorizing the contract, but no Ordinance either authorizing or ratifying the contract was ever "executed" (passed); that the parties in contracting and using the word "advance" in the March 2, 1956 agreement, did not contract expressly for repayment of the funds advanced; that defendant proved $5,202.95 special damages as a result of lawsuits filed as a direct result of operation of a temporary sewer treatment plant operated solely for the use of Meadowmere Corporation. The conclusions of law were against both claimants with judgment accordingly as hereinabove stated.

The judgment was entered on September 21, 1965. Each party filed after-trial motions which were all overruled on October 25, 1965. Both litigants appealed to the supreme court. Defendant's notice of appeal was filed November 2, 1965 (eight days after final judgment) and plaintiff's was filed on November 5, 1965, or eleven days after final judgment.

Plaintiff filed in the supreme court its motion to dismiss defendant's appeal for "failure to comply" with Rule 83.06, V.A. M.R. This motion was overruled. Defendant filed its motion to dismiss plaintiff's appeal because it was not in compliance with Rule 82.04, V.A.M.R. in that the notice of appeal was not filed within ten days after entry of final judgment. The supreme court on September 22, 1966, sustained this motion and dismissed plaintiff's appeal by the following order: "Defendant-appellant's motion to dismiss plaintiff-appellant's appeal is sustained and appeal of plaintiff is dismissed. It appearing that this court does not have appellate jurisdiction herein, this cause is transferred to the Kansas City Court of Appeals". Plaintiff filed a motion for rehearing in the supreme court, which was treated as a motion to set aside the order dismissing plaintiff's appeal. This motion was overruled by the court on October 10, 1966, and the mandate transferring to this court was mailed to us on October 12, 1966. There is no dispute between the parties as to these recited occurrences.

■ By its briefs and oral arguments plaintiff seeks to have us treat its appeal as if it had been originally filed here or at least it urges us to re-examine and reconsider defendant's motion to dismiss plaintiff's appeal without regard to the action and order of the supreme court dismissing it. This we cannot do. It seems quite clear, it is our opinion and we hold that the order of the supreme court which dismissed plaintiff's appeal is final, conclusive and binding upon this court. We have no authority to re-examine or redetermine the matter. In fact we believe that unless this were so, this court would be divested of jurisdiction and the supreme court has decreed that we do have jurisdiction. If plaintiff's suit for $21,232.40 were still pending on appeal, the amount involved would be in excess of our jurisdiction and jurisdiction would rest with the supreme court. We hold that plaintiff's appeal has been dismissed, its claim is no longer in live litigation, the circuit court judgment as to the subject matter thereof has become final and we are without authority to consider that part of the controversy any further. Therefore, the only dispute now pending has to do with defendant's counterclaim.

■■ The only witness who testified relative to defendant's counterclaim was Regna Vanatta, who was city clerk of Grandview from 1954 until 1960. She produced the circuit court files on three lawsuits which were filed against Grandview on June 2, 1958. The parties agreed in open court that considering payment of the judgments obtained therein, the costs and attorney fees, the City expended $5,202.95, in order to finally dispose of those suits. This witness also stated that she knew those lawsuits "arose out of alleged improper operation of the lagoon". Apparently the petitions so alleged, but neither the petitions nor the judgments, if any, secured against the City of Grandview in those suits, are included in the record before us. In any event, this testimony as to the basis of the suits was permitted to come into evidence. If Meadowmere or its successors are liable to defendant under the counterclaim, such liability must arise out of and be predicated upon the indemnity provisions in the written contract of March 2, 1956. Absent a definite agreement assuming liability therefor the plaintiff would not be liable. Defendant does not suggest any other source of liability. It is quite definitely the law in this state and elsewhere that an indemnitor is not liable to the indemnitee unless the liability is directly provided for by the indemnity agreement. Superior Ice and Coal Co. v. Belger Cartage Service, Inc. et al., Mo.Sup., 337 S.W.2d 897. Before the indemnitor is liable for losses resulting from the negligence of the indemnitee, the intention to assume such liability must appear clearly in the instrument. We quote from the opinion of this court in Thomas v. Skelly Oil Co., Mo.App., 344 S.W.2d 320, 322:

"In Missouri, parties may legally bind themselves to indemnify against liability for future acts of negligence. Sinclair Refining Co. v. Stevens, 8 Cir., 123 F.2d 186, 189; Kansas City Stock Yards Co. v. A. Reich & Sons, Mo., 250 S.W.2d 692, 698.

"However, to be binding on the adverse party, the contract must *clearly* indicate that such indemnity provisions apply in cases of damage resulting from the negligent acts of the party claiming the benefits of the contract. Meyer Jewelry Co. v. Professional Building Co. (K.C.), Mo. App., 307 S.W.2d 517, 521. There we said: 'In line with the great weight of authority we hold that since the lease does not in plain terms exonerate the appellant-landlord from its own acts of negligence, it does not bar plaintiff's claims.' In Missouri District Tel. Co. v. Southwestern Bell Tel. Co., 338 Mo. 692, 93 S.W.2d 19, 28 (en banc), the Supreme Court said: 'It is well settled that a contract of indemnity will not be construed to indemnify the indemnitee [agent] against losses resulting to him through his own negligent acts, *where such intention is not expressed in unequivocal terms.*' (Emphasis ours.)".

In Paro v. Pennsylvania Railroad Co. et al., Mo.App., 348 S.W.2d 613, 616, the same principle was enunciated. Again we quote:

"Whether an indemnitee can recover for losses caused by his own negligence depends on the language of the contract and what may be termed the subject matter thereof. Terminal R. Ass'n of St. Louis v. Ralston-Purina Co., 352 Mo. 1013, 180 S.W.2d 693. It has been held that as to acts which are not illegal, it is not contrary to public policy for an indemnitee to expressly contract with an indemnitor to save him harmless, as to third persons, from a loss sustained as the result of his own negligence. Kansas City, Mo. & B. R. Co. v. Southern Ry. News Co., 151 Mo. 373, 52 S.W. 205, 45 L.R.A. 380. However, the great weight of authority supports the rule that a contract of indemnity is not to be construed to indemnify the indemnitee against losses resulting to him through his own negligent acts ' "where such intention is not expressed in unequivocal terms." ' ".

The addition owned by Meadowmere was duly incorporated into and became a part of the City of Grandview. The record evidence showing this fact and the exact date thereof are not in the transcript. However, reference was made thereto in the testimony of two witnesses. Mr. Fred E. J. Hornaman, who in 1956, was vice-president of Meadowmere, said: "The annexation had been approved, at some given date which I cannot remember". Mr. W. Ruport Ramsey, who was mayor of Grandview from April, 1955 until April, 1957, testified that he did not recall the exact date of the annexation but it was prior to April, 1957.

We reiterate that the only testimony as to the cause of defendant's losses as referred to in its counterclaim came from the witness Regna Vanatta, who said the lawsuits "arose out of the improper operation of the lagoon". The operation of the lagoon, after it was constructed, was by the defendant City and not by Meadowmere or by Tri-City, the actual construction contractor. Hence the negligence, if any, was the negligence of the City.

▇ It is our opinion that the contract's indemnity provisions applied only to the construction itself. Certainly an intention to indemnify further or to indemnify against losses occasioned by defendant's negligence is not "unequivocally" expressed in the agreement. In this connection we refer further to the contract itself. Paragraph 1 thereof provides for advancement of funds "for the construction of a primary sewage treatment facility". Under Paragraph 2, the City agreed to enter into a contract with the Tri-City Construction Company for the construction of a "sewage treatment facility and outfall sewer". By the indemnity provision itself the indemnity covered damages "arising out of or in connection with the performance or rendition of any work or services under *this contract*". (Italics ours). This contract was for "construction" and not for "operation" of sewer facilities. Tri-City's

agreement was to construct—not to operate —and the indemnity covered only those things done "under this contract". We cannot and do not construe the agreement as covering the damages described in defendant's counterclaim. Our conclusion in this respect disposes of the counterclaim and makes mandatory our affirmance of the judgment for plaintiff on defendant's counterclaim.

▇ At least one other question arises and might be mentioned, namely, was the written contract of March 2, 1956, ever validly entered into by the City so as to bind the City? Defendant in the briefs and argument defending against plaintiff's petition, contends the contract was never duly and legally consummated. It says this is so because (1) the Resolution authorized and approved by the Board of Aldermen is not an Ordinance and (2) the City could only validly enter into such a contract by and through an Ordinance duly passed. It is generally understood that a city can only act by an Ordinance duly enacted, and not by Resolution. However, since we are not ruling the case on this point we shall not explore the authorities on the question. We believe, however, that one observation should be made. In defending against plaintiff's petition, the City urges that the contract was never validly entered into, but in support of its counterclaim, it asserts that the contract was validly entered into and that the indemnity provisions thereof were lawfully entered into. These two opposite positions are neither consistent, compatible nor are both tenable.

▇ In reviewing a court tried case we must review the evidence and reach our own conclusion, affording, however, deference to the trial judge as to credibility. The defendant bears the burden as to proof of all the essential elements of its counterclaim. In our opinion it has not sustained that burden and the trial court did not err in holding that defendant was not entitled to recover the $5,202.95 which it spent in defense of suits and paying judgments

**40**

against it which arose out of its (according to the only evidence before us on the question) "improper operation of the lagoon".

 Although it is our conclusion that the order of the supreme court dismissing plaintiff's appeal results in affirming the judgment on plaintiff's petition we shall, nevertheless, in the interest of complete clarity and finality, declare our determination on both the petition and the counterclaim.

The judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.