**SOUTHWESTERN BELL TELEPHONE COMPANY, Respondent,**

v.

**J. A. TOBIN CONSTRUCTION COMPANY, Appellant.**

No. KCD 27088.

Missouri Court of Appeals, Kansas City District.

May 3, 1976.

Gene C. Morris, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for appellant.

Robert M. Kroenert, Morrison, Hecker, Curtis, Kuder & Parrish, Jack C. Lorenz, James A. Daugherty, Kansas City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SWOFFORD, Judge.

The respondent (hereafter Bell), in a court-tried case, was awarded a judgment for damages to its underground cable which was severed by a bulldozer operated by appellant (hereafter Tobin) in connection with a highway construction project. Bell's petition was in three counts: 1) action for trespass; 2) violation of a highway construction contract between Tobin and the State Highway Commission under the terms of which Bell claimed to be a third party beneficiary; and 3) a cause of action based upon negligence. The court below found in favor of Tobin on the first and third counts, but in favor of Bell on the second (contract) count, and awarded it damages in the amount of $3,223.95.

Bell did not appeal from the adverse judgment on Counts one and three, but Tobin lodged this appeal of the judgment on Count two. It claims, first, that the court erred in granting a judgment on Count two because its contract with the State did not require it to indemnify Bell against the results of Bell's own negligence. Tobin also assigns error in the granting of the judgment because Bell is estopped from asserting its claim for damages. A resolution of the first point is decisive of this appeal.

The essential and basic facts generated no dispute between the parties, and these facts, as they relate to the theory of contract liability forming the basis of Count two of Bell's cause of action, may be summarized as follows.

Prior to 1965, Bell had transmission facilities located within the right of way on the west side of then U.S. 71 Highway, at or near its intersection with Route W in Platte County, Missouri. These consisted of a cable buried 2½ to 3 feet below the ground surface and overhead lines on poles on the west side of the highway. Bell learned in 1965 that the State Highway Commission planned a modification of existing No. 71 Highway to convert it to Interstate Highway No. 29, which would require the relocation of Route W and therefore a relocation of Bell's transmission lines at No. 71 and Route W.

In the early part of 1968, Bell received from the State Highway Commission copies

of the plans for the reconstruction in the area involved, Sheets 39 and 41 of which showed the specific plans affecting Bell's transmission lines at Route W. Sheet 39 indicates a six-foot flat-bottom ditch to be constructed for drainage purposes parallel to relocated Route W, and Sheet 41 shows a continuation of this ditch into the area where Bell's cable was cut by Tobin during the excavation of the drainage ditch. From these sources, Bell's engineers made a plan for the relocation of its facilities intended to conform to and avoid conflict with the proposed changes (which of necessity would include the drainage ditch). Bell decided to remove its overhead lines and to replace them with cable buried at the same horizontal and vertical location as the then existing buried cable, which was approximately 36 inches below natural grade. Bell's plans did not incorporate into or show the continuation of the proposed drainage ditch as shown on Sheet 41, but only the data as shown on Sheet 39, where the drainage ditch ends at a point northeast of where the cable was cut.

Bell's original installation of facilities at this point and the relocation thereof were both done by permission from the State Highway Commission under a written document called "Excavation Permit", which provides, in part:

"Section 9. All utility facilities will be installed and located and all other work performed in accordance with the Commission's 'Policy on Location of Utility Facilities on State Highways' and other policies of the Missouri State Highway Department. All work will be as directed by the District Engineer.

\*　　\*　　\*　　\*　　\*　　\*

Section 11. \* \* \* All other underground installations will have a minimum cover of 30 inches, *except parallel direct burial underground telephone cable, which may have a minimum of 24 inches of cover.* Greater minimums may be required by the District Engineer.

\*　　\*　　\*　　\*　　\*　　\*

Section 14. Roadway ditches, culverts and other such devices used to carry surface run-off will be kept open, free and clear at all times." (Emphasis supplied)

Had the available data obtainable from Sheet 41 of the plans been studied, it would have been apparent that the proposed location of Bell's cables at the place where they were cut would be at a vertical level of about the center of the proposed six-foot drainage ditch rather than a minimum of 24 inches below the bottom of the ditch, as required by Section 11 of the Bell permit to relocate its lines, as above set forth. The Bell relocation plan thus clearly conflicted with the highway construction plan and the relocated facilities would not be clear of the construction.

Nevertheless, Bell employed a contractor to accomplish the relocation of its facilities in accordance with the plans prepared by Bell's engineers and this work was completed on June 28, 1968.

On October 28, 1968, Tobin's bulldozer operator, while excavating the drainage ditch west of relocated Route W in accordance with the plans and specifications of the State Highway Commission and in accordance with the slope stakes placed at the site by the state engineers, cut Bell's cable, relocated within the vertical and horizontal area being excavated.

There is no evidence that Tobin had any actual or constructive knowledge of the actual location of the cut cable, but, on the contrary, assumed that Bell had relocated its lines to conform to the new construction.

■ The court below very properly found upon this evidence that Bell was negligent in failing to properly transpose Sheets 39 and 41 of the highway construction plans and to cause its relocation plans to conform therewith.

The parties concede, or at least no real issue is raised, that Bell comes within the class of donee beneficiary (third party beneficiary) of the contract between Tobin and the State Highway Commission within the general definition of that term as stated in

Restatement of the Law of Contracts, Section 133, pp. 151–152, which has been approved by the courts of this state in *Royal Indemnity Company v. Schneider*, 485 S.W.2d 452, 459[8] (Mo.App.1972) and cases cited therein. Likewise, the position of Bell fits within the special application of Section 133 under Restatement of the Law of Contracts, Section 145(a), p. 173, which states in part:

"Beneficiaries Under Promises to the United States, a State, or a Municipality. A promisor bound * * * to a State * * * by contract to do an act or render a service to some or all of the members of the public, *is subject to no duty under the contract to such members* to give compensation for the injurious consequences of performing * * * it * * *, *unless,*

(a) *an intention is manifested in the contract,* as interpreted in the light of the circumstances surrounding its formation, that the promisor shall compensate members of the public for such injurious consequences, * * *" (Emphasis supplied)

This principle of Restatement is sound and, although not heretofore specifically approved by Missouri courts, is consistent with the case law and reasoned principles of such law in this state, as will be hereafter demonstrated. So, the sharp focus of the exact point decisive of this appeal bears inevitably upon the terms of the contract between Tobin and the State as to any rights of Bell as a third party beneficiary created thereunder.

The contract for the highway construction, including the relocation of Route W here involved, between Tobin and the State Highway Commission incorporated as terms thereof the "Missouri Standard Specifications for Highway Construction, 1961" which, as pertinent here, provided:

"7.7. Preservation of Utilities, Monuments and Artifacts.

7.7.1. The contractor (Tobin) shall be responsible for the preservation of all public and private utility wires, lines * *

cables and conduits within the right of way and shall use every precaution necessary to prevent damage or injury thereto. * * *

\* \* \* \* \* \*

8.5. Cooperation with public utilities.

8.5.1. The general location of * * * *telephone conduits* * * * and other public and private utility facilities which will affect construction operations are indicated on the plans insofar as their locations are known. Some of these utilities are to remain in place; others may be removed entirely or in part by the owners for relocation elsewhere. * * *

8.5.5. *The contractor (Tobin) shall be responsible for all damage to any utility facility due directly to his operations regardless of location and he shall repair and replace as necessary any such damaged facility or make payment to the owner (Bell) for repair or replacement."* (Material in parenthesis and emphasis supplied)

Since Bell is to be considered here as a third party beneficiary of the contract between Tobin and the State, the only remaining point for decision is whether the above contract provisions protect Bell against damages resulting from its own negligence as clearly demonstrated by the evidence in this record. This point requires a survey of existing and binding decisional law viewed in the light of the contract provisions above set forth.

▪ It is clear that two parties may enter into a valid contract whereby one is indemnified by the other against loss by the former (indemnitee) as the result of his own negligence. This type of contract is routine in the area of liability insurance contracts and has been approved in areas of construction contracts. *Kansas City Power & Light Company v. Federal Construction Corporation*, 351 S.W.2d 741, 745[1] (Mo.1961).

▪ As a natural development from such contractual relationship, no legal or public policy consideration would stand as an im-

pediment precluding two parties from validly agreeing, by contract, that a third party should be indemnified against a loss incurred by his own negligence.

However, in either instance, the law has wisely required that such broad and comprehensive indemnification agreement be expressed in clear, unequivocal and unambiguous terms. Courts in Missouri have not (and should not) construe such an indemnity contract, protecting against negligence, in the absence of such clear expression or where any doubt exists as to the intention of the parties. *Kansas City Power & Light Company v. Federal Construction Corporation*, supra, at l. c. 745[1], and cases cited therein; *Missouri Pacific Railroad Company v. Rental Storage & Transit Company*, 524 S.W.2d 898, 908[12] (Mo.App.1975); *Midwestern Realty Corporation v. City of Grandview*, 416 S.W.2d 35, 38–39[2, 3, 4] (Mo.App.1967).

The terms of such indemnification should be scrutinized with even more critical vigor where the benefit accrues to a third party beneficiary rather than to an original contracting party. Broad, indefinite or general terms are not sufficient to impose contractual indemnification. *Kansas City Power & Light Company v. Federal Construction Corporation*, supra, 351 S.W.2d at l. c. 745[2]; *Missouri District Telegraph Co. v. Southwestern Bell Telephone Co.*, 338 Mo. 692, 93 S.W.2d 19, 27–28[18] (banc 1935). An example of the specificity required to create such an agreement of indemnification against negligence is found in *Missouri Pacific Railroad Co. v. Rental Storage & Transit Company*, supra, 524 S.W.2d at l. c. 908[12], where the contract provided for indemnification "notwithstanding any possible negligence".

In light of Bell's negligence which directly led to its damage, and the logical rules governing indemnification in such circumstances, it is clear that the contract between Tobin and the State, and particularly Section 8.5.5 of Specifications for Highway Construction, 1961, above quoted,

lacks the certainty and clear, unequivocally expressed intention to indemnify Bell against loss by reason of its negligence.

For these reasons, the judgment of the court below in favor of the respondent and against the appellant on Count two of respondent's petition is reversed.

All concur.