**COMMERCE TRUST COMPANY,**
Appellant,

v.

**KATZ DRUG COMPANY, Respondent.**

**No. KCD 27983.**

Missouri Court of Appeals,
Kansas City District.

May 31, 1977.

William J. Lasley, Kansas City, for appellant; James, Odegard & Millert, Kansas City, of counsel.

John W. Cowden, James H. McTurnan, Kansas City, for respondent; Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, of counsel.

Before SWOFFORD, P. J., and SHANGLER and DIXON, JJ.

PER CURIAM:

This is an appeal by Commerce Trust Company from a judgment against it ($4,636.31 and costs) in favor of Katz Drug Company on its cross-claim for indemnity of amounts it paid on the settlement of the claim of Ella Brown for personal injuries sustained by her in a fall on a sidewalk abutting Commerce's garage. Commerce asks not only that the judgment against it be reversed but that the case be remanded for entry of a judgment on its own cross-claim against Katz on an indemnity theory claimed to have arisen out of a lease agreement between it and Katz. Trial was to the court without a jury.

Mrs. Brown, on February 2, 1966, just before noon, with her sister and daughter, parked in Commerce's garage on the north side of Tenth Street, in order to have lunch at the Commerce Towers. The three walked down the driveway out of the garage. It had snowed the night before but it was not snowing at the time. There was snow and slush on the driveway and along the curbline, or lip of the sidewalk adjoining the driveway. As they walked out, Mrs. Brown held onto her sister and daughter, and as they stepped up on the sidewalk from the driveway portion they took three or four steps and Mrs. Brown fell. The sidewalk was wet with patches of snow, and slanted down west toward Main Street.

Katz's manager, Clifton Morrison, was present in the store and went out to the scene of the fall and saw Mrs. Brown lying on the sidewalk. There was slush built up around the edge of the sidewalk next to the driveway, and the sidewalk, although relatively clear, was wet where pedestrians and automobiles had pushed slush up and out upon it. At 6:00 a. m. that morning, Morrison saw that the sidewalk was covered with

snow, so he told one of the porters to clean and salt it which was done about 8:00 a. m. To Morrison's knowledge, there was no agreement between Commerce and Katz that the latter would clean the sidewalk, but Katz employees cleaned it when necessary.

Thomas Morrow, manager of Commerce's garage, testified that to his knowledge, none of his employees ever removed snow from the sidewalk next to the Katz store, and he had observed Katz employees shovelling the sidewalk, and Katz had never asked Commerce employees to do that work. Commerce employees, as a normal procedure, cleared the garage driveway of snow, but Morrow did not have personal knowledge as to whether anything was done to remove the snow from the driveway on the day Mrs. Brown fell.

The provisions of the lease between Commerce, the landlord, and Katz, its lessee, in controversy here are: "The Landlord shall maintain and keep in good condition and repair, ordinary wear and tear excepted, the exterior parts of the building of which the leased premises are a part, including the roof, outer walls, foundations, gutters and downspouts and the sidewalks adjacent thereto." The portion of the lease which Commerce contends [Point II] the trial court erred in ruling was not enforceable because it was against public policy and because it would result in Commerce being indemnified for its own active negligence is: "Tenant shall, throughout the entire term of this lease, indemnify, protect, and defend the Landlord from and against claims for damages, or injury of whatever kind or character to persons or property, howsoever caused, occurring in, on, or about the leased premises, approaches, and sidewalks adjacent to or pertaining to the same, and, further, if liability insurance be carried the Tenant shall furnish the Landlord with a certificate thereof."

In its Point I Commerce urges that the trial court erred in finding that it was negligent (either actively or passively) because it was "neither pleaded nor evidenced that the condition which caused the plaintiff's fall was the legal responsibility of Commerce Trust." In paragraph 2 of Count II of its cross-claim Katz pleaded that "said condition was created by the negligence of Defendant Commerce Trust Company which caused the construction of said sidewalk and entranceways for its own purposes and in failing to maintain said sidewalk in a safe condition for pedestrian use which it was obligated to do; that this negligence of Defendant Commerce Trust Company *is active and primary* and without which Defendant Katz Drug Company would not have been exposed to possible liability to the Plaintiff; * * *." (Italics added.) It is obvious that Katz pleaded Commerce's active negligence, and not only is that true, but the proof here of Commerce's failure to keep the driveway in good condition and to maintain it also showed active negligence on its part. It is without question, under the evidence, that Commerce made a *special use* of the portion of the sidewalk which was the driveway for vehicles entering its garage. In the case of *Cupp v. Montgomery*, 408 S.W.2d 353 (Mo. App.1966), defendant had tracked mud onto a porch where plaintiff licensee fell by reason of the slick mud. In holding that the act of tracking mud on the porch was active negligence as opposed to defendant's contention that it was passive only, the court pointed out the distinctions between the two at pages 356 and 357: "Active or affirmative negligence has been defined as negligence occurring in connection with activities conducted on the premises; [citing *Wolfson v. Chelist*, 278 S.W.2d 39, 47 (Mo. App.1955), and other cases] whereas, passive negligence is negligence that causes danger by reason of the physical condition of the premises." Here, there was no evidence of any defect in the physical condition of the driveway which preexisted and which caused Mrs. Brown's fall. The negligence of Commerce was not passive as contended by it, but was active or affirmative negligence arising out of its special use of the area when it knew that the driveway was being used by the public and its customers for its own benefit, knowing also that vehicles would track in and throw

snow upon the sidewalk adjoining the driveway thus creating a dangerous condition at the time. See the "special use" driveway cases, *Cuddy v. Shell Petroleum Corp.*, 127 S.W.2d 24 (Mo.App.1939); *Martin v. Gilmore*, 358 S.W.2d 462 (Mo.App.1962); and Anno. 88 A.L.R.2d 331, 392, 393. It was "negligence occurring in connection with activities conducted on the premises", *Cupp, supra*, 408 S.W.2d at 356. Commerce cannot escape its indemnity liability to Katz upon its contention that its negligence was only passive, and Point I is overruled.

▪ The provision in the lease that Commerce would keep the sidewalks adjoining its building in good condition and repair is not ambiguous. The provision that the landlord shall maintain and keep in good condition and repair the sidewalks is not broad and uncertain as the words "ground maintenance" found to be ambiguous in *Maschoff v. A. F. Koedding*, 439 S.W.2d 234 (Mo.App.1969), cited by Commerce, and which permitted the court to construe the contract by considering evidence that the landlord's employees had undertaken duties to shovel snow. Here, "keep in good condition" means only that the sidewalk be kept safe for use by pedestrians, especially that portion specially used by Commerce as a driveway for its own benefit. Thus, extrinsic evidence of any construction placed upon that provision by the parties, as by Katz assuming (gratuitously) to clean the sidewalk, and Commerce never having done so prior to Mrs. Brown's fall, would be of no aid in applying the plain provision as to Commerce's duty with respect to keeping sidewalks in good condition. *Willman v. Beheler*, 499 S.W.2d 770, 774[1–5] (Mo.1973), " 'When the language of a contract is plain, there can be no construction because there is nothing to construe.' " There is nothing in this case relative to any construction by the parties, as applicable to a *latent* ambiguity which would result in an estoppel as was present in the case of *Boone County v. Blue Cross Hosp. Service, Inc.*, 526 S.W.2d 853 (Mo.App.1975). There is also nothing in evidence here that the parties had been in dispute about the obligation to clean the sidewalk abutting Commerce's premises, or

that Katz acceded to any urging by Commerce that Katz was in fact under an obligation to clean the sidewalk, both of which were present in the *Boone County* case.

▪ As noted above, citing the *Cupp* case, Commerce's negligence in failing to keep its "special use" driveway in good condition is of the active or affirmative type. The trial court so found. In such a case, although contracts of indemnity from one's own negligence are valid, *Southwestern Bell Tel. Co. v. J. A. Tobin Const. Co.*, 536 S.W.2d 881, 884 (Mo.App.1976), the intention to assume that liability must be unequivocally expressed in the agreement. *Thomas v. Skelly Oil Co.*, 344 S.W.2d 320, 322 (Mo.App.1960); *Midwestern Realty Corporation v. City of Grandview*, 416 S.W.2d 35, 39 (Mo.App.1967); *Southwestern Bell Tel. Co. v. J. A. Tobin Const. Co., supra.* The lease agreement here does not allude to indemnity from Commerce's own negligence, and thus it is not enforceable. It is unnecessary to rule the claim that the indemnity agreement is void as against public policy, but note what was said in the *Southwestern Bell* case, *supra*, 536 S.W.2d 884[3], "As a natural development from such contractual relationship, no legal or public policy consideration would stand as an impediment precluding two parties from validly agreeing, by contract, that a third party should be indemnified against a loss incurred by his own negligence."

In this court-tried case, the judgment is not against the weight of the evidence, and there exists no firm belief that it is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

The judgment is affirmed.