Nicole Ann CERTA et al.,
Plaintiffs-Respondents,

v.

ASSOCIATED BUILDING CENTER,
INC., a Missouri Corporation,
Defendant-Respondent,

and

Joseph Hamilton, Defendant-Appellant.

No. 38073.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Dec. 6, 1977.

Motion for Rehearing and/or Transfer
Denied Jan. 18, 1978.

Application to Transfer Denied
Feb. 8, 1978.

Carter, Bull, Baer, Presberg & Lee, Richard O. Funsch, St. Louis, for defendant-appellant.

Dallas Cox, Jr., St. Louis, for plaintiffs-respondents.

REINHARD, Judge.

Pursuant to § 537.080, RSMo. 1969, minor plaintiffs brought this wrongful death action against defendant Joseph Hamilton, William Hamilton, and Associated Building Center, Inc. (hereinafter Associated). At the close of the evidence plaintiffs dismissed as to William Hamilton. A jury found in favor of defendant Associated, but in favor of plaintiffs on their claim against defendant Joseph Hamilton. Plaintiffs' damages were assessed at $50,000.00. Joseph Hamilton appeals.

The action arose out of an automobile accident which occurred on the morning of December 4, 1972, in the westbound lanes of Highway 40 just west of the Big Bend overpass. Approximately one thousand feet east of that overpass, Highway 40 crests and the road gradually slopes down-

ward to a point west of the Big Bend overpass. On the day in question, the roads were damp but it was not raining. The testimony is in conflict as to the volume of traffic on the highway at the time of the accident, estimates ranging from light to heavy.

On the morning of December 4, Joseph Hamilton, hereinafter defendant, was proceeding in the center westbound lane of Highway 40 at a speed of approximately forty to forty-five miles per hour. At the time, he was driving his father's Jeep. Also riding in the Jeep at this time were defendant's sister, Joan Certa, hereinafter decedent, and Richard Murphy. As the vehicle reached the Big Bend overpass, the hood of the Jeep became disengaged and blew up against the windshield. According to the testimony of various witnesses, the hood flew up and off the Jeep in a single motion, flying over into the lane to the right of the Jeep. Defendant testified that the hood flew up against the windshield of the Jeep and held there for a few seconds while he was slowing down.

The evidence is conflicting as to defendant's conduct after the hood flew off the Jeep. Defendant testified that he slowed down and looked around for the hood, while remaining in the center westbound lane. Defendant then noticed in his rear view mirror that a truck was approaching approximately fifty feet behind him in the center lane. According to his testimony, defendant, while coasting at about five miles per hour at this time, attempted to put the Jeep in gear and proceed to the right side of the highway, but the Jeep was rear-ended by the Associated truck before defendant could release the clutch. Defendant testified that he was unsure whether he was stopped immediately prior to or at the time of the collision.

Raymond Webb, on the morning of December 4, 1972, was driving a truck for Associated in the westbound lanes of Highway 40. According to Webb and his driving partner, John Rogers, as they came down the slope to the east of the Big Bend overpass, Webb was driving in the right curb lane behind a Gravois Planing Mill truck driven by Julian Whittington. Webb testified that as he approached the Big Bend overpass at a speed of approximately forty-five miles per hour, he saw what he thought was a piece of cardboard fly across the road into the path of the red truck ahead of him. Webb and his partner then saw Whittington brake and swerve to avoid the object. Webb did not know that the object in the road was the Jeep's hood nor was he aware that the Jeep in the center lane had lost its hood. While still in the right-hand lane, Webb braked slightly, checked the center lane for traffic, and finding it open behind him, moved his truck into the center lane at a speed of forty to forty-five miles per hour. When he had moved into the center lane, Webb saw a Jeep slowing down or stopped in the center lane approximately fifty to a hundred feet ahead of him. He immediately made an emergency application of the brakes but was unable to stop the tractor-trailer before it collided with the rear of the Jeep, which, according to the testimony of various witnesses, was stopped in the center westbound lane. Approximately ten seconds had elapsed between the time Webb saw the object fly in front of the red truck and the moment the collision occurred.

A description of the accident by Julian Whittington, who was driving the red Gravois Planing Mill truck was essentially consistent with that of Webb and Rogers with one exception. According to Whittington, the Associated truck was not in the right-hand lane behind his red truck but rather was traveling in the center lane behind the Jeep. Whittington did testify that the Jeep came to a dead stop in the center lane and that the accident occurred in that lane. As a result of the collision, Joan Certa sustained head injuries from which she died on December 6, 1972.

Other facts will be related as it becomes necessary in the course of the opinion.

Defendant's first point on appeal is that the trial court erred in giving plaintiffs' verdict directing instruction based on MAI 17.20 instead of a verdict directing instruc-

tion based on MAI 17.12. Plaintiffs' verdict directing instruction, as given by the trial court, reads as follows:

INSTRUCTION NO. 5

"Your verdict must be for plaintiffs Nicole Ann Certa, Rebecca Lee Certa and Gina Selene Certa and against defendant Joseph Hamilton if you believe:

First, plaintiffs are the surviving minor children of Joan Certa, deceased, and

Second, defendant Joseph Hamilton stopped the Jeep in a lane reserved for moving traffic, and

Third, defendant Joseph Hamilton was thereby negligent, and

Fourth, such negligence either directly caused Joan Certa's death or combined with the acts of defendant Associated Building Center, Inc., to directly cause Joan Certa's death.

(MAI 17.20, 17.01, 19.01, 20.01 Tendered by Plaintiffs)"

Defendant asserts that the proper verdict directing instruction would have been one based on MAI 17.12, which reads as follows:

"Defendant suddenly stopped his automobile on the highway without first giving an adequate and timely warning of his intention to stop."

According to defendant, the facts warranted the giving of MAI 17.12 to the exclusion of any other verdict directing instruction, and the failure to do so constituted prejudicial error in that Instruction No. 5 as given omitted the essential elements of *suddenly* stopping *without adequate and timely warning.*

■ To be sure, when an MAI instruction exists which is applicable to a party's theory and the evidence of a given case, it is to be given to the exclusion of any other instruction on the same issue. Rule 70.01; *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co.,* 525 S.W.2d 345, 350 (Mo.App.1975); *Williams v. Christian,* 520 S.W.2d 139, 144 (Mo. App.1974). However, in asserting that MAI 17.12 was the appropriate instruction to be given to the exclusion of any other, defendant relies totally on a consideration of the evidence as he seeks to construe it. It is

clear that the same evidence could be such as to support two potential theories of recovery to which two separate MAI instructions would be applicable. As long as there was sufficient evidence to support him, plaintiff is entitled to choose the theory of recovery on which to submit his case to the jury, and to select the appropriate MAI accordingly. This right of choice is expressed by the rule that a plaintiff is entitled to a verdict directing instruction on his theory of the case if such an instruction is supported by the evidence. *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co., supra* at 350; *Williams v. Christian, supra* at 141. Therefore, in determining the appropriate verdict directing instruction in this case, both the plaintiffs' theory of recovery and the evidence offered at trial must be considered.

Defendant appears to be asserting that plaintiffs should have been bound to a theory of recovery based on defendant's stopping the Jeep suddenly and without adequate warning. While plaintiffs did include in their petition an allegation that defendant had been negligent in stopping suddenly and without adequate warning, they did not have to rely on this theory of negligence in the submission of the case to the jury, and indeed, they chose not to. Rather, they chose to go to the jury on the theory that defendant Joseph Hamilton had been negligent in simply stopping his Jeep on the highway in a lane reserved for moving traffic, a theory of recovery alleged in their petition and embodied in Instruction No. 5, which was accurately modeled after MAI 17.20. They were entitled to an instruction based on this theory of recovery if supported by the evidence. Therefore, since MAI 17.20 was consistent with plaintiffs' theory of recovery, the crucial question is whether the evidence supported the giving of an instruction based on MAI 17.-20. If the evidence was adequate, then plaintiffs were entitled to Instruction No. 5 as representing their theory of recovery.

■ Before reviewing the sufficiency of the evidence to support the giving of the

instruction, we believe it necessary to consider generally those situations in which MAI 17.12 will be appropriate and those situations in which MAI 17.20 will be appropriate. MAI 17.12 is appropriate as an instruction for either negligence or contributory negligence, when the rear-ended party has unnecessarily stopped in such an abrupt and unsignaled manner as to create an unreasonable danger that the cars following behind will collide with him. See *Schoessel v. Robertson*, 480 S.W.2d 95 (Mo.App.1972); *Tucker v. Blankenmeier*, 315 S.W.2d 724 (Mo.1958); *Joly v. Wippler*, 449 S.W.2d 565 (Mo.1970). Implicit in the use of this instruction is the belief that under the applicable facts a gradual or well signaled stop would not have been negligent and would have given those who were following the opportunity to avoid a collision.

■ If, however, the circumstances were such that the stop was neither sudden nor unsignaled, but still negligent, then MAI 17.20 would be the appropriate instruction.[1] MAI 17.20 reads:

"Defendant stopped his automobile in a lane reserved for moving traffic."

The Notes on Use following MAI 17.20 state that not every stop in a moving-traffic lane will be negligent. Rather, the situation must have been such that the jury could reasonably find that such stop was negligent. The Committee's Comment on MAI 17.20 further suggests the applicability of the instruction: "There are occasions when the stop is neither sudden nor unsignaled but still negligent. Failure to pull onto the shoulder in cases of motor or tire trouble * * * are typical particularly when the stop is just past the crest of a hill or at night." MAI 17.20 will be appropriate and mandatory in a situation in which the theory of negligence lies not in the nature of the stop, be it unsignaled, sudden or otherwise, but in the fact that the party stopped *at all*. In these situations, a gradual stop or one made with reasonable warning would be of no avail to the "rear-ending" party. Rather, in the situation to

which MAI 17.20 would be appropriate, the contention is that the gradual stop would be a negligent act, just like the sudden stop.

■ In reviewing whether the evidence was sufficient to support the giving of plaintiffs' verdict directing instruction, the appellate court is to consider the evidence, and all reasonable inferences therefrom, in the light most favorable to plaintiffs, giving them the benefit of all defendant's evidence favorable to them and not contradicted by their own evidence or theory of the case, and disregarding all defendant's unfavorable evidence. *Williams v. Christian, supra* at 141. As to the quantum of evidence required, the issues submitted in an instruction must be supported by substantial evidence. *Dickey Co., Inc. v. Kanan*, 537 S.W.2d 430, 434 (Mo.App.1976); *Bridgeforth v. Proffitt*, 490 S.W.2d 416, 425 (Mo.App.1973).

■ In the instant case, considering the evidence from the viewpoint most favorable to plaintiffs, we believe that MAI 17.20 was both appropriate to plaintiffs' theory of recovery and supported by the evidence adduced at trial. Under Instruction No. 5, the jury had to find, among other things, 1) that defendant Joseph Hamilton stopped the Jeep in a lane reserved for moving traffic, and 2) that Joseph Hamilton was thereby negligent. Both of these findings had to be made for the verdict directing instruction to control. As to the first part of the instruction, witnesses testified that after the hood had flown off the Jeep, defendant stopped the Jeep in the center westbound lane of Highway 40. Even defendant himself stated that he may have stopped. There was nothing in the record to indicate that the loss of the hood adversely affected the immediate driveability of the Jeep. Defendant himself testified that, at the time of the collision, he was about to drive the Jeep over to the side of the road. There was clearly substantial evidence that defendant had stopped his Jeep in the center lane.

1. See cases noted in the Committee's Comments: *Lane v. Supreme Cab Co.*, 374 S.W.2d 527 (Mo.App.1964), and *Lotshaw v. Vaughn*, 381 S.W.2d 43 (Mo.App.1964).

As to such stopping being negligent, the evidence was also adequate. At the time of the accident, the pavement was damp. The estimation of traffic ranged from moderate to heavy. There was testimony that the truck owned by Associated was in the westbound right-hand lane and unaware of the trouble that the Jeep was having in the center lane. Webb testified that, in an effort to avoid whatever trouble the red Gravois Planing Mill truck was encountering, he checked the center lane and, finding it clear, switched lanes, only to be confronted by the Jeep stopped ahead of him. Both Webb and Rogers, as well as Whittington, testified that Webb applied the brakes in an emergency fashion but could not stop the truck in time. Again, viewed in a light most favorable to plaintiffs, a reasonable inference of these facts could support a contention that the collision was not the result of the abrupt or unsignaled nature of the Jeep's stopping,[2] because the driver of the Associated truck would have had no opportunity to take advantage of any warning. This evidence was sufficient to support an instruction based on plaintiffs' theory that defendant was negligent in stopping his Jeep in the middle lane of Highway 40, on damp pavement, amid morning traffic, when he could have driven the Jeep over to the curb or continued in his lane. *Bridgeforth v. Proffitt, supra,* 490 S.W.2d at 425. Under plaintiffs' theory of recovery, the giving of MAI 17.20 was supported by the evidence and therefore mandatory under Rule 70.01. We find no error here.

In his second point on appeal, defendant contends that the trial court erred in failing to direct a verdict on behalf of Joseph Hamilton. Defendant asserts that a verdict should have been directed for appellant because plaintiffs' case of negligence against him was insufficient as a matter of law. Again, we find that defendant's contention is without merit.

In appellate review of a trial court's denial of defendant's motion for a directed verdict, the court must look at the evidence, and all reasonable inferences therefrom, in the light most favorable to the plaintiffs, giving those parties the benefit of all evidence favorable to them and not contradicted by their own evidence, and ignoring any unfavorable evidence of the defendant. *Kaelin v. Nuelle,* 537 S.W.2d 226, 232 (Mo.App.1976); *Abbey v. Heins,* 546 S.W.2d 553, 558 (Mo.App.1977). From such a perspective, the court must consider whether there was substantial evidence from which a jury could reasonably find in favor of the plaintiffs. *Kaelin v. Nuelle, supra* at 233.

We find it unnecessary to recatalog the evidence here, considering the previous recitations as to the stopping of the Jeep in the center lane of westbound traffic, the condition of the pavement and the traffic, the feasibility of driving the Jeep over to the shoulder or continuing forward, and the relative positions of the vehicles. We think it clear that there was substantial evidence from which a jury could have found the requisite elements of negligence in this case. A recapitulation of the evidence would be superfluous. There was no error in the trial court's denial of defendant's motion for a directed verdict.

The judgment is affirmed.

STEWART, P. J., and DOWD, J., concur.

---

**2.** We do not mean to suggest that the stop was either unsignaled or abrupt, and we make no finding on that issue. We merely mean to suggest here that the evidence was adequate to support an assertion that the negligence lay in considerations other than the abruptness of the stop.