Malati NAGARAGADDE, Respondent,

v.

Raghu PANDURANGI, Appellant.

No. WD 66276.

Missouri Court of Appeals,
Western District.

March 13, 2007.

James C. Spangler, Sedalia, for appellant.

Daniel J. Pingelton, Columbia, for respondent.

Before: SMART, P.J., SMITH and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from a jury verdict awarding Malati Nagaragadde $215,030.67 in damages on a negligence claim against

her son-in-law, Raghu Pandurangi.[1] Raghu contends the trial court erred in entering judgment on the verdict because Malati failed to prove an element of her negligence claim. For reasons explained herein, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In August 1998, Malati traveled from her native India to visit the home of her daughter and son-in-law in Columbia, Missouri. All of the family members practice Hinduism, and it is their custom to pray twice daily. In the basement of the home, Raghu had set up a prayer area that included an altar and a small oil lamp placed on the floor. Although Hindu tradition dictated that the lamp would remain lit twenty-four hours a day, Raghu requested each member of the family to extinguish the lamp after their prayers, for safety reasons, because of the remote basement location.

On October 4, 1998, Raghu completed his morning prayers and forgot to extinguish the flame when he left the basement in a hurry. Later that morning, Malati entered the prayer area wearing her traditional sari.[2] She went through her preliminary rituals without realizing the lamp was lit. Her sari caught fire when it came in contact with the lamp's small flame, and she was severely burned. Due to her injuries and medical complications, Malati was unable to return to India until more than one year later in November 1999.

Malati filed suit against Raghu asserting negligence. The jury found in favor of Malati, awarding her medical expenses in the amount of $215,030.67. The trial court entered judgment on the verdict and de-nied Raghu's Motion for Judgment Notwithstanding the Verdict (JNOV).

## ANALYSIS

In both of his points on appeal, Raghu contends the trial court erred in submitting the negligence claim without requiring the jury to find that he knew or should have known that his failure to extinguish the lamp posed a risk of injury to Malati. Point I asserts the court erred in denying his motion for JNOV, and Point II argues instructional error. We address these points together.

■■■ Missouri law defines negligence as the failure to exercise the degree of care that a reasonably prudent person would use under the same or similar circumstances. *Behrenhausen v. All About Travel, Inc.*, 967 S.W.2d 213, 216–17 (Mo. App.1998). To prove a claim of negligence, a plaintiff must show: (1) the defendant had a duty to protect plaintiff from injury; (2) the defendant failed to protect plaintiff from injury; and (3) the plaintiff was injured as a result of such failure. *Id.* at 217.

Malati pled her claim under a theory of simple negligence. Her petition stated in relevant part:

> At about 9:30 am on October 4, 1998, Defendant completed a prayer session in his basement. After the prayer session, Defendant neglected to extinguish the open flame from the ceremonial lamp, contrary to his usual habit. . . .

> Defendant's negligence in failing to extinguish the oil lamp is the direct and proximate cause of Plaintiff's burns and

1. For ease of reference, the remainder of this opinion refers to the parties by their first names. No disrespect is intended.

2. A "sari" is a garment worn primarily by Hindu women that consists of five to seven yards of a lightweight cloth draped gracefully and loosely so that one end forms a skirt and the other a head or shoulder covering.

resulting injuries, bodily damage, pain, suffering and costs for medical care[.]

Based on this pleading and the evidence at trial, the court submitted a verdict director for a single negligent act, pursuant to MAI 17.01.[3] Instruction No. 6 stated:

Your verdict must be for plaintiff if you believe:

First, that defendant failed to extinguish an open flame on a ceremonial oil lamp at the conclusion of his use of the lamp;

Second, that defendant was thereby negligent, and

Third, that as a direct result of such negligence, plaintiff sustained damage.

Raghu argues the trial court erred in using this simple negligence instruction because Malati was a licensee in his home at the time she was injured by a dangerous condition on the property and, therefore, the facts gave rise to a negligence claim of landowner or premises liability, for which MAI 22.07 is the proper instruction. MAI 22.07 states:

Your verdict must be for plaintiff if you believe:

First, there was (*here describe the condition which caused the injury*) on defendant's premises and as a result the premises were not reasonably safe, and

Second, defendant knew of this condition and knew that such condition was not reasonably safe, and

Third, defendant knew or had information from which defendant, in the exercise of ordinary care, should have known that persons such as plaintiff would not

discover such condition or realize the risk of harm, and

Fourth, defendant failed to use ordinary care to [either] [make the condition reasonably safe] [or adequately warn of it], and

Fifth, as a direct result of such failure, plaintiff sustained damage.

Because Instruction No. 6 did not include the third element of the verdict director in MAI 22.07, Raghu asserts the negligence claim was not properly submitted and the judgment must be reversed.

■ An instruction will be given or refused by the trial court according to the law and the evidence in the case. Rule 70.02(a).[4] The issue of whether the jury was properly instructed is a question of law, for which little deference is given to the trial court's decision. *Wright v. Barr*, 62 S.W.3d 509, 526 (Mo.App.2001). In considering the propriety of a jury instruction, we review the evidence in a light most favorable to the submission of the instruction on any theory supported by the evidence. *Id.* A new trial is warranted when the party challenging the instruction shows that it misled, misdirected, or confused the jury. *Wicklund v. Handoyo*, 181 S.W.3d 143, 152 (Mo.App.2005). If the verdict directing instruction omits an essential element, it is given in error, *Dobbins v. Kramer*, 780 S.W.2d 717, 719 (Mo.App. 1989), and the failure to give an applicable MAI instruction is error which is presumed prejudicial. *Citizens Bank of Appleton City v. Schapeler*, 869 S.W.2d 120, 128 (Mo.App.1993).

---

**3.** MAI 17.01 Verdict Directing—Single Negligent Act Submitted:

Your verdict must be for plaintiff if you believe:

First, defendant violated the traffic signal, and

Second, defendant was thereby negligent and

Third, as a direct result of such negligence, plaintiff sustained damage.

**4.** All rule citations are to Missouri Rules of Civil Procedure (2006) unless otherwise noted.

The MAI instructions for premises liability are applicable in negligence cases where the cause of the injury or damage was an unsafe or defective condition of the property itself. *Joyce v. Nash*, 630 S.W.2d 219, 223 n. 1 (Mo.App.1982). A premises liability claim does not arise merely because one of the inhabitants of the property engages in dangerous conduct that injures an invitee or licensee. *Williams v. Barnes & Noble, Inc.*, 174 S.W.3d 556, 560 (Mo.App.2005); *Cook v. Smith*, 33 S.W.3d 548, n. 1 (Mo.App.2000).

In *Williams*, 174 S.W.3d at 559, the plaintiff filed a premises liability claim against a bookstore for injuries that occurred when she was knocked down by a store employee chasing a shoplifter. On appeal of summary judgment granted in favor of the bookstore, the appeals court determined that the petition likely stated a claim of ordinary negligence but not premises liability. The court explained: "Generally, the dangerous condition [for premises liability] is some sort of *artificial condition* on the property itself, not a negligent or dangerous act of one of the inhabitants of such property." *Id.* at 560. The court concluded that chasing a shoplifter was not a *"physical defect* in the property that contributed to the injury." *Id.* at 559. The case was remanded for dismissal of the premises liability claim.

While the facts of the instant case present a closer question than *Williams*, we similarly conclude that Raghu's failure to extinguish an oil lamp cannot be considered a defective condition of the property itself. The pleadings and the evidence at trial established an affirmative act of negligence that was unrelated to the passive condition of the home in which it occurred. As recognized in *Joyce*, 630 S.W.2d at 223 n. 1, the mere presence of a licensee does not alter the property owner's "duty of ordinary care to prevent injury by active conduct." Thus, the trial court properly used the simple negligence instruction, patterned after MAI 17.01, to direct the jury's verdict.

We note further that the verdict director was proper based on the theory elected by Malati's petition. In arguing that MAI 22.07 was the appropriate instruction to the exclusion of any other, Raghu relies on an interpretation of the evidence as he seeks to construe it. However, a plaintiff is entitled to choose the theory of recovery and to have the jury instructed on that theory, if supported by the evidence. *Adams v. Badgett*, 114 S.W.3d 432, 436 (Mo.App.2003). Even in a situation where the evidence could support two theories of recovery to which two separate MAI instructions would be applicable, the plaintiff has the right to elect the theory on which to submit her case and to select the appropriate MAI verdict director. *Certa v. Associated Bldg. Ctr., Inc.*, 560 S.W.2d 593, 596 (Mo.App.1977).

Malati could have pled facts alleging that the routine use of a small oil lamp on the floor of the home was a passive, dangerous condition of the property, but instead she asserted that Raghu's failure to extinguish the lamp on one occasion constituted a single negligent act. The former allegation might have supported a premises liability claim; however, Malati chose only to plead and present evidence on a claim of ordinary negligence. "[I]n determining the appropriate verdict director, both the plaintiff['s] theory of recovery and the evidence offered at trial must be considered." *Id.* Malati's evidence was sufficient to show that Raghu admittedly "forgot" to extinguish the oil lamp after his morning prayers on October 4, 1998, and that his failure to follow his own safety rule resulted in her injury. In light of the evidence supporting Malati's theory of recovery, the trial court did not

err in instructing the jury on the simple negligence claim.[5] *Id.* at 598.

Raghu also argues that Instruction No. 6 improperly stated the requirements for simple negligence because it assumed disputed facts regarding the foreseeability of Malati's injury and, therefore, converted the claim into one of strict liability. Foreseeability of harm is the "touchstone" of all negligence claims, in that it is the likelihood of injury from the defendant's conduct that gives rise to his duty to protect the plaintiff. *Joyce,* 630 S.W.2d at 222. To properly consider the negligence claim, Raghu argues the jury should have been required to find that he knew or should have known that the failure to extinguish the lamp would pose a risk of injury to users of the prayer area. He asserts the evidence at trial only showed that he requested family members to extinguish the lamp to keep the house from catching fire. Without language requiring a finding that Raghu knew his conduct would cause *injury to persons,* he contends Instruction No. 6 was a roving commission that allowed the jury to "roam freely" through the evidence and make assumptions that he also knew the lamp posed a risk to Malati. Raghu asserts the verdict director allowed the jury to hold him strictly liable and ignore the foreseeability of harm required to prove his negligence.

As noted, Instruction No. 6 was a modified version of MAI 17.01. The MAI was designed to preclude the submission of detailed evidentiary facts and allow submission of only ultimate issues of fact to the jury. *Coon v. Dryden,* 46 S.W.3d 81, 93 (Mo.App.2001). Modifications of the pattern instructions to submit the issues of a case are to be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b). The instruction must, however, require a finding of all ultimate facts necessary to sustain the verdict; and where facts are in dispute, they need to be submitted to the jury. *Coon,* 46 S.W.3d at 93.

Raghu relies on *Joyce,* 630 S.W.2d 219, in contending that Instruction No. 6 was tantamount to a verdict director on strict liability. In *Joyce,* the jury found a defendant negligent for releasing guard dogs into a fenced sales lot where the plaintiffs were shopping for a motor home. *Id.* at 220–21. The incident occurred at about 7:30 pm, and the defendant did not know the plaintiffs were on the property at the time he locked the gates to the lot, released the dogs, and closed his business for the evening. *Id.* at 222. The plaintiffs were able to take shelter from the dogs by climbing into their pick-up truck, but they were trapped on the lot for more than two hours before being rescued by emergency personnel. *Id.* at 221. The jury awarded compensatory damages based on the plaintiffs' theory of "negligent failure to determine that there were no persons on the premises" ·before releasing the dogs. *Id.* at 220–21.

On appeal, the judgment was reversed due to instructional error. The court determined that the verdict director submitted strict liability, instead of negligence, because the jury was not required to find that the defendant knew or should have

**5.** The partial dissent correctly points out the distinction between active and passive negligence. While we agree that the facts here could be characterized as passive negligence, we disagree that the trial court was *required* to construe the claim in that manner given the nature of the pleadings and the evidence. Rather, the court's sole obligation was to give the verdict-directing instruction predicated upon the plaintiff's theory of the case, if supported by the evidence. *Adams,* 114 S.W.3d at 436; *Certa,* 560 S.W.2d at 596, 598.

known that the plaintiffs were on the property before closing the gates and releasing the dogs. *Id.* at 223–24. The court explained that the defendant's knowledge was a critical factual element of the negligence claim:

> Neither the release of the dogs nor the closure of the gates was inherently negligent. That conduct becomes culpable only if the defendant knew or should have known that the [plaintiffs] were then still on the premises and—by the standard of a reasonable person—failed to take precautions commensurate with the danger to avoid risk of injury to them.

*Id.* at 224.

In *Joyce,* the foreseeability of any harm from releasing the dogs into a locked compound was too remote to constitute negligence without the additional qualifying factor that the defendant knew the plaintiffs were on the lot. That is not true in the instant case, where the foreseeability of injury from failing to extinguish the lamp was apparent. Raghu testified that he instructed family members to extinguish the lamp after their prayers because "the fire hazard is very imminent in this kind of situation." Under these circumstances, the foreseeability of harm was not as attenuated as that discussed in *Joyce.* The open flame from the small lamp on the floor was so inherently dangerous that any reasonable person would know that it could result in property damage or personal injury from a fire. Accordingly, in asking the jury whether Raghu was negligent in failing to extinguish the flame, it was not necessary to add the additional qualifying factor that he knew or should have known of the potential harm to Malati. The facts stating Raghu's conduct were sufficient to show the foreseeability of injury.

Ragu also relies on *Gomez v. Construction Design, Inc.,* 126 S.W.3d 366, 371 (Mo. banc 2004), in arguing that Instruction No. 6 was a roving commission. However, the negligence verdict director in *Gomez* differed from that of the instant case because it did not specify what improper act or omission by the defendant constituted negligence. To avoid a roving commission, the court must instruct the jurors regarding the specific conduct that renders the defendant liable. *Centerre Bank of Kansas City, Nat'l Ass'n v. Angle,* 976 S.W.2d 608, 618 (Mo.App.1998). Here, Instruction No. 6 identified the conduct—Raghu's failure to extinguish the open flame—which, if the jury found to be true, supported the claim of negligence. As explained, it was not necessary to require the jury to find that Raghu knew Malati could be injured from the unattended flame, because the nature of his conduct carried that inherent risk. The instruction submitted the ultimate facts necessary to sustain the jury's verdict and was, therefore, proper.

In light of our ruling that there was no instructional error, we need not further address Raghu's argument concerning the denial of his motion for JNOV. Because Malati presented a submissible case of negligence on the theory pled in her petition, the court properly refused to grant the post-trial motion. Points I and II of the appeal are denied.

### Conclusion

We affirm the trial court's judgment.

Separate Opinion Concurring in Result by SMART, J.

JAMES M. SMART, JR., Judge, concurring in result.

This case deals with the important issue of whether we will recognize the traditional categories of premises liability claims. I

write separately because I believe it was error for the trial court, upon defendant's request, to refuse to give the premises liability instruction of MAI 22.07.

I believe that the risk of injury here was created by a condition of the property—a lighted oil lamp—rather than active intervention by the possessor of the land. Defendant-appellant Raghu was not working in the basement with an open flame in the vicinity of his mother-in-law when her garment caught fire. This is not a case of Raghu's duty to exercise care while handling or lighting the oil lamp in her presence. Rather, this is a case of his duty that morning when he left the basement to guard against the *future* danger presented by allowing the oil lamp to remain lit after he left the area. The real nature of the claim is that Raghu knew or should have known (1) that others beside himself would likely use the basement prayer area, and (2) that the open flame was a dangerous *condition.*

> [A]ctive negligence as defined in landowner cases in Missouri is negligence occurring in connection with activities conducted on the premises.... Passive negligence on the other hand ... is negligence which arises from permitting defects upon the property or from dangers arising from conditions on the property.

*Arbogast v. Terminal R.R. Ass'n of St. Louis,* 452 S.W.2d 81, 84 (Mo.1970). The risk was caused by a condition—a lighted lamp—not by something the parties were doing together or something Raghu was doing in his mother-in-law's presence. The nature of the claim would have been different if Raghu and his mother-in-law had been engaged in prayers together and Raghu's actions or positioning of the lamp had caused the garment to catch fire. *See generally The Law of Torts,* Section 27.6 (2d ed.1986); Harper *et al.*

In many cases it is very clear that the claim is one of passive negligence and therefore a claim of premises liability, not a claim of active negligence. *See, e.g., Wolfson v. Chelist,* 278 S.W.2d 39, 47–48 (Mo.App.1955) (also noting contrast to cases of active negligence, for example, in a case in which a visitor to a construction site was struck by the contractor's motor vehicle).

Sometimes the cases can involve a very close call. In *Cupp v. Montgomery,* 408 S.W.2d 353 (Mo.App.1966), for instance, the court dealt with the issue of whether the defendant's fault in that case could be characterized as active negligence. In that case, the defendant and the plaintiff were working together on a project involving defendant's back yard at the time of the injury. *Id* at 354. Late in the afternoon, the defendant negligently deposited slippery mud on the back porch when the defendant entered the house briefly and then came back out. He did not want to take the time to clean the mud off the porch because he was busy. *Id* at 355. About an hour later, while the parties were still working together, the plaintiff fell due to the slippery mud and the darkness, when he tried to ascend the porch. *Id.* at 354. The court, in dealing with this issue, noted that the muddy condition of the yard and the mud on the porch resulted from the activities the men were conducting on the premises. *Id.* at 357. The dangerous condition was not something plaintiff encountered separately from the defendant's presence. *Id.* Although one would usually think of a case of mud on the porch as involving passive negligence, the court concluded that the jury could find active negligence, apparently because the two men were still working together on the project at the time of both the negligence and the injury. *See id.*

This case is distinguishable from *Cupp* because here the defendant had left the area, and the plaintiff encountered the danger by herself. The defendant was not engaged in an activity either jointly with his mother-in-law or in her presence. The risk of injury was separated from any activity the defendant was engaged in at that time—and was caused by a condition—an open flame. As the Court in *Arbogast* stated:

> The injury to [plaintiff] here resulted from a condition existing on the property and not from any activity conducted on the property by the landowner or its employees and hence there is no evidence here to constitute active negligence as plaintiff contends.

452 S.W.2d at 84.

Why does it matter? Because historically owners and possessors of land have the right to utilize their property as they see fit, subject only to the duty that is imposed by law according to the nature of the relationship between the possessor of the land and the visitor to the land. *See Carter v. Kinney*, 896 S.W.2d 926, 929–30. In *Carter*, the plaintiff-appellants urged the Supreme Court to throw out the archaic distinctions between licensees and invitees and to simply hold all possessor s of land to a standard of reasonable care under the circumstances. *Id.* at 929. The Court said:

> The contours of the legal relationship that results from the possessor's invitation reflect a careful and patient effort by courts over time to balance the interests of persons injured by conditions of land against the interests of possessors of land to enjoy and employ their land for the purposes they wish. Moreover, and despite the exceptions courts have developed to the general rules, the maintenance of the distinction between licensee and invitee creates fairly predictable rules within which entrants and possessors can determine appropriate conduct and juries can assess liability. To abandon the careful work of generations for an amorphous "reasonable care under the circumstances" standard seems—to put it kindly—improvident.

*Id.* at 930.

For the foregoing reasons, I conclude that, regardless of how the case was pleaded by the plaintiff, the owner of the property had a right to have his case decided and to have the jury instructed according to the law of premises liability.

Having said that, I find it difficult to say that the error in instructing the jury was prejudicial in this case. *See, e.g., Syn, Inc. v. Beebe*, 200 S.W.3d 122, 134 (Mo.App. W.D.2006) (imposing standard of care higher than the law requires is prejudicial). MAI 22.07 would have required the jury to find that the defendant left the lamp burning and to find that defendant should have known that persons such as plaintiff would not discover the condition or realize the risk of harm; while the instruction given required merely that the jury find that he left the lamp burning and was thereby negligent. It seems arguable that in the precise facts of this case the facts are such that the presumption of prejudice is rebutted. There was no dispute that the defendant left the lamp burning. There was no dispute about the fact that defendant considered the lamp to present a danger. The only dispute was about whether he thought it was dangerous only to property or also to persons (which seems not so meaningful of a distinction when one considers the dangers to persons presented by a burning house). Unless I misunderstand, the essence of any claim of negligence here (and the essence of the arguments by the attorneys) was the assertion that the defendant should have known that his mother-in-law

would not recognize the condition (that the lamp was already lit) or realize the risk of harm, which is exactly what the defendant's requested instruction (MAI 22.07) would have required the jury to find. The appellant relies on the presumption of prejudice but fails to explain how there was any prejudice in this case. The presumption of prejudice is not a blind presumption. *See Syn, Inc.,* 200 S.W.3d at 134. I do not see the prejudice here, so I concur in result. However, I do not agree with failing to uphold in this case the traditional rules of premises liability. It will make a difference in some cases. *Carter,* 896 S.W.2d at 930.

I agree with affirmance. However, for the reasons mentioned above, I believe it was error to reject the request of defendant to instruct the jury in accordance with MAI 22.07.