**John HAYNES, Jr., and Troostwood Banquet Hall, Respondents,**

v.

**Ray EDGERSON d/b/a Ray Edgerson Insurance Agency, Inc., Ray Edgerson Insurance Agency, Inc. and Ray Edgerson, Individually, Appellants.**

**No. WD 66532.**

Missouri Court of Appeals, Western District.

Nov. 6, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2007.

Keith A. Cutler, Kansas City, MO, for Appellants.

Daniel W. Craig, Kansas City, MO, for Respondents.

Before THOMAS H. NEWTON, P.J., PAUL M. SPINDEN, and RONALD R. HOLLIGER, JJ.

THOMAS H. NEWTON, Presiding Judge.

Mr. Ray Edgerson and the Ray Edgerson Insurance Agency (Agency) appeal from the jury verdict against them in a suit for negligent procurement of insurance brought by Mr. John Haynes, Jr. and his business, the Troostwood Banquet Hall, Inc., which operates the Troostwood Banquet Hall (Hall).

Mr. Haynes bought the Hall property and spent two years renovating it. He began renting the Hall out for wedding receptions, birthday parties, and church functions.

Mr. Haynes sought an insurance policy for the Hall. He was referred to Mr. Edgerson and the Agency, and contacted them to obtain liability insurance. Mr. Haynes described the types of functions, the approximate size of crowds he expected, the coverages he wanted, and requested a recommendation from Mr. Edgerson as to the coverage he should obtain.

Mr. Edgerson made recommendations for policy limits and costs. He also stated, "[I]t wasn't a matter if something would happen, it was a question as to when it would happen." The application Mr. Edgerson completed for the Hall indicated that the banquet hall would be rented for private parties. Mr. Haynes never specifically told Mr. Edgerson that he expected violence to occur at the Hall, nor did he specifically request "assault and battery coverage." Mr. Haynes testified that he conveyed to Mr. Edgerson that he required coverage for any injuries that might occur to patrons.

In response to these conversations, Mr. Edgerson obtained insurance for the Hall from Western World (first policy), which contained assault and battery coverage. Mr. Edgerson testified that such coverage is not standard coverage in a typical policy and must be requested, and that it was a mistake for the exclusion for assault and battery to be omitted. He also testified that "I provide what I'm asked to provide," and that if told the Hall would be rented out for "private parties," that would be an indication that assault and battery coverage was needed and requested. Mr. Edgerson also stated that he thought that

Mr. Haynes was requesting coverage for adult and small private events, not events involving young people. He further testified that he does not review the actual policies, and that he only reviews the cover sheet that comes with the policy. The broker who obtained the policy, Ms. Carol Mauslein, testified that Mr. Edgerson may have requested the assault and battery coverage, "but that did not mean that I could provide it." When she was asked to confirm that he may have requested the coverage, she denied saying that she had stated that he may have. Mr. Haynes's insurance expert, Mr. Jerry Bedell, testified that for such coverage to be included in a policy, it must have been requested.

The first policy expired around April 2002, and Mr. Haynes contacted Mr. Edgerson and asked him to "renew my insurance." Mr. Haynes did not request any changes to the insurance coverage, and Mr. Edgerson submitted the same application form that he submitted for the first policy to procure insurance through Atlantic Casualty (second policy). The second policy, which became effective in July 2002, had an assault and battery exclusion.

On the evening of November 23, 2002, after the second policy was in place, a birthday party was held at the Hall. An individual attending the party was shot and killed. Mr. Haynes was sued for wrongful death. A jury verdict against him awarded five million dollars plus four hundred fifty thousand dollars in post-judgment interest.

After the suit was initiated, Mr. Haynes contacted his attorney to submit a claim to the insurance company. The claim was denied because of the exclusion for assault and battery within the policy.

Mr. Haynes sued for negligent procurement of insurance and sought to pierce the corporate veil of the Agency and hold Mr. Edgerson personally liable. The Agency had a "claims made" policy covering the time period from June 27, 2002, to June 27, 2003, retroactive to June 27, 1993. This type of policy only covers claims made during the period of coverage, without regard to when the occurrence for which coverage is sought happened. There was no evidence of any other insurance for the Agency's alleged negligence.

Before the trial, appellants filed a motion *in limine* to keep out evidence of collateral issues, which the court sustained. The questionable evidence related to several complaints about the Agency filed with the Missouri Department of Insurance. One was a complaint that the Agency failed to refund a premium after a policy was cancelled for non-payment. The complaint was withdrawn, and a related federal lawsuit was settled. Another complaint that was not allowed at that time was one that occurred after the events in the current case were completed. This complaint was settled with the Missouri Department of Insurance, in which the department listed the allegations against Mr. Edgerson and the Agency but made no finding of wrongdoing in exchange for payment of a fine. During the cross-examination of Mr. Edgerson, discussing the cancellation of Mr. Haynes's policy the following exchange occurred:

Q. So you were aware that this policy had been cancelled?

A. No.

Q. This is in your file.

A. You know, listen, and understand this. When someone's policy is cancelled for non-payment, it's not brought to my attention all the time. I have a secretary that handles those things and they just file it. I really don't know, because it's rare that I get cancellations, because people normally keep their

insurance. So, I don't ... I didn't know, so the answer is no. But when I do get a cancellation, if it was a finance premium, it doesn't come to me, it goes to the finance company, because they're the ones that hand the money out.

Q. It's rare that you get cancellation notices from insureds?

A. Is it rare?

Q. You just testified that it's rare that you get cancellation notices.

A. Yeah, I mean, that I'm aware of. I don't handle cancellation notices. I said it's rare, because I don't normally come into contact, you know, with that, with the servicing after the insurance is established.

At this point Mr. Haynes's attorney requested permission to ask about the prior complaints because Mr. Edgerson had opened the door to the evidence of prior complaints with his narrative answers directed to the jury. The trial court allowed this line of questioning to impeach Mr. Edgerson. The scope of the impeachment was supposed to be limited to pointing out that these two cases occurred to impeach Mr. Edgerson's statement that cancellations were rare.

■ The jury returned a verdict in favor of Mr. Haynes for 5.73 million dollars. The jury assigned 25% of the fault to Mr. Haynes and 75% of the fault to Mr. Edgerson and the Agency. Mr. Edgerson and the Agency appeal the verdict. In the first point, they claim that the trial court erred in denying their motion for directed verdict and judgment notwithstanding the verdict (JNOV) because Mr. Haynes did not make a submissible case. In the second and third points they claim the trial court erred in submitting an instruction to the jury because it did not state that Mr. Haynes had to specifically request the assault and battery coverage and because it

instructed the jury that Mr. Edgerson's duty to provide coverage under the second policy legally flowed from the first policy. In the fourth point, they argue the trial court erred when it admitted evidence of collateral complaints filed against Mr. Edgerson and the Agency. In the fifth point they claim error because the trial court allowed Mr. Jerry Bedell to give expert testimony because expert testimony was not required or proper. In the sixth point, appellants claim that the trial court erred in allowing the Agency's corporate veil to be pierced. Finally, Mr. Edgerson and the Agency claim that the trial court erred in denying his motion for new trial because the cumulative effect of the various errors precluded a fair trial.

## LEGAL ANALYSIS

■ In the first, second and third points the appellants argue that the trial court erred in denying their motion for directed verdict and JNOV because Mr. Haynes failed to make a submissible case, and that the trial court erred by submitting an instruction that did not require the jury to find that Mr. Haynes specifically requested the assault and battery coverage, and that instructed the jury that Mr. Edgerson's duty under the first policy flowed to the second policy. Appellants claim that because Mr. Haynes never specifically requested assault and battery coverage, Mr. Edgerson had no duty to provide it to him.

■ We review the evidence to determine if Mr. Haynes made a submissible case. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007). In doing so, we review the evidence in the light most favorable to the plaintiff affording him all reasonable inferences and disregarding evidence and inferences that conflict with the verdict. *Id.* An instruction will be given or refused by the trial

court according to the law and the evidence of the case. Rule 70.02(a). Whether the jury was properly instructed is a question of law, which we review *de novo*. *Nagaragadde v. Pandurangi*, 216 S.W.3d 241, 244 (Mo.App. W.D.2007). We view the evidence in the light most favorable to submission of the instruction on any theory supported by the evidence. *Id.* A new trial is granted if the party challenging the instruction shows that the instruction "misled, misdirected, or confused the jury." *Id.* There is no MAI instruction for negligent procurement of insurance. In order to prove negligent failure to procure insurance, Mr. Haynes needed to plead and prove: "(1) that Agent agreed to procure, for compensation, insurance from [I]nsurance [c]ompany ...; (2) that Agent failed to procure the agreed upon insurance, and in doing so, failed to exercise reasonable care and diligence; and (3) damages resulted therefrom." *Parshall v. Buetzer*, 121 S.W.3d 548, 554 (Mo.App. W.D.2003).

The instruction indicated that the jury must find for Mr. Haynes if it found:

> First, Plaintiffs requested insurance consistent with the insurance coverage Defendants had procured previously for Plaintiffs, which included assault an battery coverage; and Second, Defendants agreed to procure insurance consistent with the insurance coverage Defendants had procured previously for Plaintiffs, which included assault and battery coverage, and Third, either: Defendants failed to procure the same or similar insurance coverage that Plaintiffs had previously requested and Defendants had previously procured for Plaintiffs; or Defendants, unable to procure the same or similar insurance coverage that Plaintiffs had previously requested and Defendants had previously procured for Plaintiffs, failed to timely notify Plaintiffs; and Fourth, Defendants, in any

one or more of the respects submitted in paragraph Third, were thereby negligent, and Fifth, as a direct result of such negligence, Plaintiffs sustained damage.

There is no doubt that the first policy contained coverage for assault and battery. Mr. Edgerson claims that he did not know that this coverage was included and that he did not review the first policy before obtaining the second policy. When Mr. Haynes asked to renew his insurance, Mr. Edgerson, as a professional insurance agent, should have looked at the first policy and matched it, or if he could not he had a duty to inform Mr. Haynes. He should not rely on his memory, or even his prior application alone. A request for the same coverage demands a view of the prior policy. The request was sufficient to place a duty on Mr. Edgerson to procure the policy with assault and battery coverage. We want to stress that this is not a broad statement that all insurance agents in every situation have a duty to provide this type of coverage; but under the facts of this case, the agent did have a duty to either obtain the same coverage or explain that he could not. Furthermore, agents should review prior policies when they are asked to "renew coverage" so that both agent and client are clear about what needs to be done. This does not open the door to agent liability in other circumstances, which would require advice on optional coverages.

■ Although appellants are correct that there is no continuing duty from one policy to the next, *Hecker v. Mo. Prop. Ins. Placement Facility*, 891 S.W.2d 813, 816 (Mo. banc 1995), this case does not involve a continuing duty from one policy to another. Mr. Haynes requested the same coverage in the second policy as in the first. When Mr. Edgerson agreed to procure such insurance, the legal duty was

created, not as some continuing duty stemming from the initial policy, but from the agreement. A reasonably competent agent, who handles many insurance claims, should look to the first policy to determine what the second policy should contain.

Thus, Mr. Haynes made a submissible case and, viewed in the light most favorable to submission of the instruction, the facts in this case and the law support submission of this instruction. Points one, two and three are denied.

■■■■ In their fourth point appellants argue that the trial court allowed inadmissible collateral issues to be used to impeach Mr. Edgerson. The collateral evidence referred to is the unrelated complaints about the Agency to the state.

■■■ While a party is bound to the answer that a witness gives under cross-examination on a collateral issue and cannot offer evidence to contradict that answer, this seems to apply only where a defendant has denied questions asked of him. *Overfield v. Sharp*, 668 S.W.2d 220, 223 (Mo.App. W.D.1984); *Cantrell v. Superior Loan Corp.*, 603 S.W.2d 627, 637 (Mo. App. E.D.1980). Here, Mr. Edgerson opened the door with his narrative answer to a question that did not require the level of detail he volunteered.

■■■■ Trial courts have great discretion in the admission of evidence. *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 164 (Mo.App. W.D.2006). A trial court abuses its discretion in admitting evidence when its ruling is clearly against the logic of the circumstances, is so arbitrary and unreasonable as to shock the sense of justice, and indicates a lack of careful consideration. *Id.* at 164–65. An abuse of discretion in such cases does not mandate a reversal unless the party was prejudiced by the admission. *Id.* at 165. An error is prejudicial if it affects the result of the case. *Id.* The appellant must prove that had the evidence not been admitted the outcome would have been different. *Id.*

We find that Mr. Edgerson's responses did not open the door to impeachment cross-examination because Mr. Edgerson's comments were that he did not normally come into contact with cancellations, not that he knows nothing about them. Furthermore, evidence of two cancellations, which he was aware of, does not in itself impeach his statements that he "doesn't normally come into contact with cancellation notices." This does not preclude coming into contact with cancellation notices on occasion. Thus, the trial court abused its discretion. However, this does not end the inquiry; we still have to determine whether the admission of this evidence was prejudicial.

During cross-examination, the questions asked went beyond the cancellations themselves and implied from the prior complaints that Mr. Edgerson was untrustworthy, incompetent, and had withheld payments without cause. This reflected on Mr. Edgerson's character, was irrelevant to the issue of whether he had inadequately procured insurance for Mr. Haynes, and prejudiced Mr. Edgerson in the eyes of the jury. Thus, we reverse and remand for new trial.

■■■ Because the fourth point is dispositive, we decline to address the remaining points except for the sixth point, which we address for the sake of judicial efficiency because it is likely to recur on retrial. Appellants claim that the corporate veil should not have been pierced because Mr. Edgerson did not completely dominate the corporation, his control of the corporation was not used to commit fraud or perpetuate the violation of a legal duty, and his control of the corporation was not the

proximate cause of Mr. Haynes's alleged harm.

Mr. Haynes moved to amend his petition to add Mr. Edgerson as a party on the theory that the corporate veil should be pierced. Mr. Haynes submits that the control of the corporation was used to perpetuate a violation of a legal duty because the corporation was undercapitalized in that it did not have sufficient insurance to cover liability. Mr. Edgerson and the Agency counter that they had sufficient insurance but that Mr. Haynes did not file his claim soon enough to meet the requirements of his insurance policy, which required the claim in this case to be filed by June 27, 2003.

Three elements are required in order to pierce the corporate veil. First, the defendant must have control and domination of the corporate entity; second, defendant must have used that control to commit fraud or violate a legal duty; third, the control and breach of duty must be the proximate cause of the injury. *Mobius Mgmt. Sys., Inc. v. West Physician Search, L.L.C.,* 175 S.W.3d 186, 188–89 (Mo.App.E.D.2005). The fraud or violation of a legal duty can be met by showing that the company is undercapitalized. *Id.* at 189. Such undercapitalization is circumstantial evidence of an improper or reckless disregard for the rights of others. *Id.* at 189. Inadequate capitalization is generally measured at the time of incorporation. *Real Estate Investors Four, Inc. v. Am. Design Group Inc.,* 46 S.W.3d 51, 58 (Mo. App. E.D.2001).

The company had no assets beyond office furniture and had insurance coverage good for only one year,[1] and this was essentially the state the Agency was in when it was incorporated. Mr. Edgerson completed and signed the paperwork, mostly in the form of the applications for the first and second policy, and he contacted and informed Mr. Haynes about the coverage in the insurance. Mr. Edgerson admitted in his deposition that he had complete control over the corporation. Finally, because Mr. Edgerson was in control of the corporation and caused the injury to Mr. Haynes through this control, the third element is met.

In conclusion, we reverse and remand for a new trial because of the admission of prejudicial collateral evidence.

PAUL M. SPINDEN, and RONALD R. HOLLIGER, JJ., concur.

---

1. Although the insurance was retroactive to 1993 it cannot truly be said to cover that period. Because it only covers claims made during the time period, retroactive coverage does nothing, because no claims can be filed during the period of retroactivity.